**STATE of Texas, Appellant,**

v.

**Floree HAIRE, Appellee.**

**No. 10728.**

Court of Civil Appeals of Texas.

Austin.

March 16, 1960.

Rehearing Denied April 20, 1960.

Will Wilson, Atty. Gen., James H. Rogers, Asst. Atty. Gen., Robert L. Burns, Houston, of counsel, for appellant.

David L. Tisinger, Austin, for appellee.

GRAY, Justice.

This is a condemnation proceeding instituted by the State to acquire part of Lots 5 and 6 of Block 147 in the City of Austin for the construction of a State Office Building. Floree Haire was the owner of the property and is appellee here.

Prior to the introduction of any evidence at the trial appellee filed an admission of the State's right to condemn reserving to

herself the right to open and close. The parties stipulated that the date of the taking of the property was May 15, 1958 and the cause proceeded to trial before a jury on the issue of damage. Upon the jury's verdict a judgment was rendered awarding appellee $53,000. The State has appealed.

Block 147 lies immediately east across Brazos Street from the Capitol grounds. The block is bounded on the north by 13th Street, on the south by 12th Street, on the west by Brazos Street and on the east by San Jacinto Street. An alley from east to west divides the block into its north and south halves. The property in question is out of the north half of the block and fronts 65.13 feet on 13th Street and 75.5 feet on San Jacinto. It contains approximately 5154 square feet. Its principal improvement was a two-story frame building of sturdy construction and about forty years old. It was originally a residence but prior to the taking it had been converted into four apartments, three of which were rented and the fourth was used as a residence by appellee. There were other improvements on the property such as retaining walls, sidewalks, driveway and a parking space for cars.

The Capitol grounds lies between Brazos Street on the east, Colorado Street on the west, 11th Street on the south and 13th Street on the north.

In answer to the only issue submitted the jury found that the market value of the property in Austin on May 15, 1958 was $53,000. The trial court instructed the jury "that the term 'market value' is the price which the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying."

Appellant here presents nine points. The first two are to the effect: That there is no evidence to support the jury's answer of market value of the property and that the jury's answer is so against the overwhelming weight and preponderance of the credible evidence as to be manifestly wrong and unjust.

■■ The first point presents a question of law and the second a question of fact. In answering the second point we must review all of the evidence. King v. King, 150 Tex. 662, 244 S.W.2d 660; Tudor v. Tudor, Tex., 314 S.W.2d 793. This review of the evidence will of course answer the first point.

Appellee called Mr. Uselton who qualified himself to testify as to market value of the real property in Austin. He testified that he was familiar with the property in question and other property in that vicinity. He was asked if he knew the meaning of the term "market value" and answered by giving a definition in substantially the same words as contained in the trial court's definition of the term. He gave his opinion as to the uses for which the property was suitable and said he appraised it in 1957 at $76,370.70 and said it had increased in value between five and ten per cent per year since that time. He reviewed sales of other property, compared their values with the value of appellee's property, stressed the location of the property and said its location made it valuable for commercial use. His opinions and statements were tested by a lengthy and thorough cross-examination.

There was evidence that the City of Austin had assessed the property for taxes at a total value of $18,010, this being $11,220 for the land and $6,790 for the improvements.

Appellant called four witnesses who gave their opinions of the market value of the property. These values were: $28,400; $35,000; $34,000 to $35,000, and $33,000 to 35,000. The opinions of these witnesses were also tested by cross-examination.

■ The location of the property immediately across the street from the State Capitol, its adaptability for commercial use and its ability to produce income were all matters stressed in the examination of

the witness and were facts and circumstances to be considered by the jury, along with other evidence in determining the market value of the property.

■ The market value of property necessarily is a matter of opinion. McCormick & Ray, Texas Law of Evidence, § 1422, Vol. 2, p. 256; 16 Tex.Jur. p. 584, § 255. The testimony of witnesses qualified to express their opinions as to the market value of property is admissible to aid the jury in determining such value, however, the jury is not bound by such testimony. Nass v. Nass, 149 Tex. 41, 228 S.W.2d 130. In Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943, 945, it is said:

"The opinion testimony of experts, although persuasive, under most circumstances is not conclusive. It is peculiarly within the province of the jury to weigh opinion evidence, taking into consideration the intelligence, learning, and experience of the witness and the degree of attention which he gave the matter. The judgments and inferences of experts or skilled witnesses, even when uncontroverted, are not necessarily conclusive on the jury or the trier of facts, unless the subject is one for experts or skilled witnesses alone where the jury or the court cannot properly be assumed to have, or be able to form, correct opinions of their own based upon the evidence as a whole and aided by their own experience and knowledge of the subject of inquiry."

In Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, 64, it is said:

"Jurors in weighing the evidence before them have a right to use their common knowledge and experience in life. If the opinions of the experts as given in evidence do not comport with the jurors' ideas of sound logic, the jurors have a right to say so. Otherwise there could not be a free discussion of the evidence in the jury room. * * *."

The answer of the jury to the issue is within the limits of the market value of the property as testified to by the witnesses. It is true that no witness testified that such value was $53,000. However, this was not necessary in order for such answer to find support in the evidence. State v. Littlefield, Tex.Civ.App., 147 S.W.2d 270, er. dism. j. c. If the above rules were not applicable then opinion evidence would control rather than aid the jury in determining market value.

■■ Applying the above tests to the evidence before the jury it cannot be said that there is no evidence to support the finding of market value. Also the weight to be given to the opinions of the witnesses was for the jury. This being true, then a review of all of the evidence, which we have already referred to, fails to sustain appellant's point that the finding of the jury is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

Appellant's third point complains that the trial court over its objection permitted the witness Uselton to testify as to the replacement costs of the building on appellee's land. This witness testified that the best use of appellee's land would be to "commercialize it" * * * remove the present building and then erect a commercial building. The witness depreciated the improvements and said: "I naturally arrived at the naked land value itself in addition to the improvements." He said the value of the naked land was $61,851.60 and that the value of the improvements was $14,519.10. He said he followed the customary way of making appraisals of property and said:

"Well, the main structure of the build contains 3,661 square feet. I figured the building, present day replacement cost, at $9.00 a square foot, or $32,949. Then I took into consideration the age of the building and the present condition of the building and I depreciated it sixty percent. I depre-

ciated it $19,769.40, which left a present day value of the building, of the main improvements, of $13,179.60. Then I took the porches, screen porches, the open porches, and the concrete porches, and the other items that you don't that you separate from the main structure itself, I took a square foot area of each of those individual items and figured the actual replacement cost on those. I depreciated some of them sixty and some of them seventy percent, depending on the condition. One would be in better condition than the other would be. Depending on their present condition, I depreciated them so much percent. When I got through, I figured that the actual present day value of the improvements was $14,519.10."

 The improvements are to be here treated as a part of the land. State v. Carpenter, Tex.Com.App., 126 Tex. 604, 89 S.W.2d 979. Uselton's testimony was that the best use of the land would require the removal of the improvements but that a purchaser would be required to purchase them along with the land. The evidence merely valued the improvements separately from the naked land. It went to the issue of market value and was explanatory of the opinion of the witnesses of such value and was evidence affecting such value. 16 Tex.Jur. § 252, p. 578. Clearly it was evidence of the market value of the property if considered for its best use as testified to by the witnesses. In any event we think the evidence did not harm appellant because the testimony of the witness placed the value of the land without the improvements at a sum in excess of the value found by the jury. Southwestern Public Service Co. v. Goodwine, Tex.Civ.App., 228 S.W.2d 925, er. ref. n. r. e.

██ By its fourth point appellant complains of the closing argument of appellee's attorney wherein the attorney said:

"The Court says to look at this as involving a person not under any pres-

sure to sell. Now, counsel makes fun of Mr. Uselton because he did not put the word 'offer' in his definition of market value. Of course, the Court in his definition here says: 'The price the property will bring when offered for sale by a person willing to sell but not under any compulsion to sell.' Now, what counsel was trying to get Mr. Uselton to say was that market value would always refer to a person who had voluntarily come out on the open market himself and first listed the property for sale. That is not what the Court means here. Because any time you put a price on property, you have made an offer. But you can make an offer after somebody had come to you first; you wouldn't have to go to them first; it would still be an offer, and that is all the Court means. The Court does not mean for you to visualize this situation as one where the property owner had gone out on the open market himself first and initiated the business transaction, because he says, 'I want you to view it as a person not under any pressure to sell.'"

After the closing argument was completed but before the jury retired, appellant made objection to the above argument on the ground that it was an erroneous interpretation of the law as submitted by the Court to the jury and requested that the jury be instructed "that the definition of market value as being the price which the property will bring when offered for sale by one who is desirous to sell means that the property has been offered on the market for sale by the owner thereof." The objection was overruled and the request was denied.

On cross-examination the witness Uselton testified:

"Q. Your definition of market value, you recognize the element of a seller desirous of selling and a buyer desirous of buying; do you also recognize it requires that the seller being

offering the property for sale? A. Not necessarily. In the real estate business you make a lot of deals on a piece of property that the buyer wasn't wanting to sell that property, but you approached that buyer and induced him to sell.

"Q. I see. When you do that, you don't have a willing seller; you have a person whom you have induced to sell? A. Where you * * *

"Q. Is that one of these duress sales you are talking about? A. No, sir.

"Q. Let's back up. In your conception of market value, you don't recognize the hypothetical seller as having the property offered for sale? A. A lot of times you don't have it offered for sale.

"Q. I am talking about the definition being sued for the basis of your testimony today as to the market value of this property. A. Yes, sir.

"Q. In regard to that, it is not your conception that the seller has it offered for sale? A. Well, sometimes they do and sometimes they don't."

Appellee was authorized to interpret the above testimony and the complained of argument was likely directed to the cross-examination. It was explanatory of the term "when offered for sale" used in the trial court's instruction and we think it was not an argument contrary to that instruction.

▆▆▆ Appellant's points five and six are briefed together and are to the effect that: The jury was guilty of misconduct by attempting to calculate the amount of money necessary to yield appellant an income of approximately $260 per month when invested at five percent per annum, and the trial court erred in permitting appellee, over objection, to question appellant's witness Legge as to a comparison of the monthly income of appellee's property with

the monthly rental paid under a term lease of the Goddard property.

There is evidence in the record that an investor looked at the true value of property and considered its income possibilities. There was also evidence that five percent is a good return on an investment.

The testimony of the three jurors who testified at the hearing on appellant's motion for new trial was to the effect that they figured how much money invested at five percent per annum would return $260 per month. $53,000, the amount found by the jury to be the market value of appellee's property, invested at five percent per annum would yield less than $250. Material jury misconduct probably resulting in injury to appellant is not shown. Rule 327, Texas Rules of Civil Procedure. The following statement from Curfman v. State, Tex.Civ.App., 240 S.W.2d 482, er. ref. n. r. e., is applicable.

"The trial court, in overruling appellants' motion for new trial, has impliedly held that either (1) the occurrence was not tantamount to misconduct within meaning of the Rule, or (2) it was reasonably doubtful that the verdict had been materially affected thereby. Such ruling has support in the evidence and is therefore binding upon this Court. * * *"

Appellant's point six complains that the cross-examination of its witness Legge was misleading because gross and net rentals were compared as equals. This complaint goes to the weight of the evidence and to a matter that could have been and doubtless was explained to the jury in the arguments.

Points seven, eight and nine are briefed together. Point seven is to the effect that the trial court erred in permitting the witness Uselton to testify that a long-term lease on three lots west of the Capitol grounds "would produce between $125,000.-00 to $130,000.00 over a period of twenty years, and that it would require $765,000.00

invested at 6% per annum to produce that income. It was his opinion that this property had a value of $765,000.00 or $37.35 per square foot. He valued an old building on this land at $30,000.00 to conclude that the value of the land would be about $730,000.00 or $735,000.00." Point eight complains that the trial court erred in permitting the witness Pearson over objection to testify on cross-examination that appellee could not replace her property with property the same size and as close to the Capitol as hers for $28,000 or any other sum.

Point nine complains that the trial court erred in refusing to permit the witness Pearson to state his opinion of comparative values of property on the east and west sides of the Capitol and to say why he did not give any weight to the sales of the Andrews, Searight, Shelton and Goddard properties.

■■■■ The witness Uselton testified that the income from property was an element to be considered in determining its value and stated his opinion as to the value of the three lots subject to the lease. He testified that he was familiar with the property. Appellant says that a lease of property is not similar to a sale. Here the lease was referred to as evidence of an in-income produced by the property. The rental value of property may be proved by the opinion of a witness acquainted with the property and by facts bearing upon its use. 20 Am.Jur. p. 755, § 899. Appellant says that the terms of the lease were hearsay. The lease was not admitted in evidence. Even if we agree with appellant we do not think that under the entire record and considering Uselton's testimony in its entirety his reference to the terms of the lease was caluculated to cause and probably did cause the rendition of an improper verdict. Rule 434, Texas Rules of Civil Procedure; Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191.

■■ Appellee asked the witness Pearson on cross-examination:

"Q. Could Mrs. Haire replace her property with property the same size and this close to the Capitol for $28,-000?"

After various objections and replies thereto made to the trial court the witness answered: "She could not replace it for any figure." However, before answering the question the witness made the following statement which was not withdrawn:

"A. Judge, I had to evaluate what he means by adjacency. There is no longer, and there was not on the date he mentioned, property adjacent to the State Capitol, which could be purchased by anyone because of the program in which this property is involved had been announced and was in effect prior to that time; therefore, the State Capitol perimeter has been extended, and to make a perfectly accurate statement, which I prefer to do, I would say that she can buy property adjacent to the new perimeter."

This statement, together with other statements in the record, acquainted the jury with the State's program of acquiring land for its building program for which reason the complained of answer related to an undisputed matter explained to or in the presence of the jury. Harmful error is not presented.

■■ Appellant's witness Pearson was not permitted to answer questions propounded to him by appellant on re-direct examination. The record does not contain the purported answers of the witness and point nine presents nothing for review. 3-A Tex.Jur. p. 534, § 421; 3 Tex.Jur.2d p. 670, § 416.

It is our opinion that appellant's points be overruled and that the judgment of the trial court be and it is affirmed.

Affirmed.