**J. S. COCKE et ux., Appellants,**

**v.**

**The STATE of Texas, Appellee.**

**No. 11303.**

Court of Civil Appeals of Texas.

Austin.

May 26, 1965.

McClain & Stump, W. K. McClain, Georgetown, for appellants.

Waggoner Carr, Atty. Gen., Hawthorne Phillips, Stanton Stone, T. B. Wright, Carroll R. Graham, Robert C. Patterson, Asst. Attys. Gen., Austin, for appellee.

ARCHER, Chief Justice.

This is a condemnation case. Appellee, plaintiff, below, brought this action against J. S. Cocke and his wife, Mary E. Cocke, to condemn and take the fee simple title, excluding oil, gas and sulphur, to 39.7 acres of land out of a parent tract containing 220.4 acres located on U. S. Highway 81 approximately two and one-half miles north of the center of Georgetown, Williamson County, Texas.

Appellants admitted that appellee had the right to condemn under its petition, that all

prerequisites to condemnation had been complied with, that the County Court of Williamson County, Texas, had jurisdiction to try said cause and that the only questions to be resolved at the trial were the fair market value of the property taken and damages, if any, to the remaining land as of September 20, 1962.

The case was tried before a jury and in answer to special issues submitted, the jury found that the market value of the tract condemned was $8,650.00, that the market value of the remaining land immediately before the taking was $49,957.00 and that the market value of the remaining land immediately after the taking was $48,957.00.

Judgment was entered on the jury verdict on September 1, 1964, and it is from this judgment that appellants have appealed.

The appeal is predicated on six points and are that the trial court erred in permitting witness McKee to testify that a water culvert could be used as a stock pass; in permitting witness Legge to testify as to the use of the remaining land or a portion thereof could be used for business, such as a filling station, motel or shopping center, when the land was part of a farm; in overruling defendants' motion for a new trial based on jury misconduct, in endeavoring to answer the issues in a manner that would entitle the appellants to only $1,000.00 damages; in permitting witness Legge to compare this farm land to urban lots, and the sale price of such lots; in overruling a motion for new trial because the verdict of the jury in answer to Issues Nos. 1, 2 and 3 was so contrary to the preponderance of the evidence as to be fundamentally wrong, and in returning a verdict for an amount substantially less than the testimony shows appellant is entitled to.

■ The appellant did not object to and obtain a ruling from the trial court and waived such concerning the testimony of McKee.

The testimony about which appellant complains is as follows:

"Q All right. Now, there was some discussion earlier about—I thought maybe you might clear it up— the significance of this cattle pass that is under the highway; there was some question as to whether or not—

MR. McCLAIN. Now, just a minute. He says this is a cattle pass, but the witness hasn't said this. For this reason, I say he is leading the witness. I would like him to state what that it down there, what that structure is.

THE COURT: All right.

Q Are you familiar with any structure that is under the creek in through there, Mr. McKee?

A Yes, sir; I refer to this as a culvert.

Q What type?

A Let me explain that on the interstate system, we don't build stock passes, as such. If the design or the hydraulics require a structure large enough that is suitable for a stock pass, and the use of that structure as a stock pass is compatible with the construction and the operation of the facility, there is no objection by the Highway Department in the owner operating that as a stock pass.

MR. McCLAIN: I object to him saying that there is no objection from the Highway Department unless he has authority to speak for the Highway Department. I would object to this unless—do you have the authority to speak?

A I think so, yes, sir.

MR. McCLAIN: All right; okay." 4 Tex.Jur.2d 377, Sec.

108. Texas Employers' Insurance Association v. Dennis, Tex.Civ. App., 372 S.W.2d 559, er. ref., n. r. e. Webb v. Mitchell, Tex.Civ. App., 371 S.W.2d 754, n. w. h.

■ The appellants first introduced testimony concerning the use of stock passes under a highway.

Mr. Cocke was asked on direct examination and answered as follows:

"Q Mr. Cocke, what is your present use of this 25 acres which lies east of old 81?

A Well, I've got an underpass under the present road, and my cattle go back and forth over there and come up here to the house to water.

Q Then let me assume this, Mr. Cocke. In so far as your 25 acres is concerned and your 12 acres is concerned, you will still have the underpass there; do you use that underpass for cattle?

A State that question over.

Q From the 25 acres to old 81 is still in here; that's right, isn't it, old—

A Yes.

Q 81 is still there, and your little 12-acre tract is still there on the west side?

A Uh huh.

Q Now, I am asking you to state to this jury whether or not cattle can still go across here between the 12 acres and 25 acres?

A Yes, between the 12 acres and the 25 acres they can graze all that and then go back and forth under that underpass."

Appellants are precluded from complaining about testimony which they invited the State to introduce and which they first introduced into the trial. 4 Tex.Jur.2d 279, Sec. 769. Texas Power & Light Company v. Lovinggood, Tex.Civ.App., 389 S.W.2d 712.

■ There was no testimony that the remainder would be damaged but for a stock pass and no witness testified that the market value of the remainder was reduced in value or damaged because appellants' farm would be in four tracts after the taking as compared to three tracts before the taking, and there was no evidence upon which the jury could base damages due to the additional tract.

Apparently each value witness for appellants considered elements of damage to the house, and damage because a part of the remainder was left unfenced, and damage because a water gap would be needed on the fence in the Pecan Creek area.

Mr. Wolf fixed the before taking at $72,120.00 and after taking at $61,840.00 or a difference of $10,280.00 and damages to the house at $5,000.00, refencing $1,500.00 and cost of water gap $200.00, or a total of $6,700.00.

J. S. Cocke fixed the value before taking at $72,120.00 and remainder after taking at $64,143.00 with damages to house, cost of refencing and water gap at a total of $8,000.00. There were two other witnesses who fixed the damages at substantially as did Mr. Wolf and Mr. Cocke.

Mr. Harold Legge, called by the State, testified concerning his experience in the appraisal business qualifying as an expert and listed professional organizations he was a member of, and named them, and of his appraisals in the State of Texas, but did more appraisal work in this area and that such included city property, urban property, from a residence to industrial properties, vacant land, farms and ranches, and was admitted to be an expert by the appellant.

The witness testified that he appraised the farm and ranch belonging to appellants in the early part of 1962, and had an opinion as to the market value of the land and detailed what he did and how he arrived at such value, and described the farm involved herein as to soil and contour and the improvements, and gave the prices paid for lands in the area naming a number of places and the names of the owners and purchasers.

The witness outlined the best usage of the properties in the separate tracts as home sites and other purposes and fixed a value of the three tracts including improvements at $57,000.00 or approximately $260.-00 per acre, that the improvements would contribute about $70.00 an acre and the land at $190.00 per acre, and specifically stated:

"* * * Therefore, I considered that the entire frontage of this property had value back to a depth of 300 feet. By taking a 300-foot depth—it was my opinion that the influence of the highway extended back not more than 300 feet—and by taking that 300 feet across there and placing a value on the property as a highway frontage, it was my opinion that that had a value of $300 an acre as compared with $150 an acre for the rear land, and it is my opinion that the 25 acres could be sold at that time for $300 an acre at the date of this taking because it is a smaller tract and could be sold for a smaller use; and then the improvements, I estimate, contributed about $70 an acre, and that is on the basis of estimated value of the house and the improvements and so on. Now, the improvements, the outbuildings here and the fences, are usually considered in with the land, because all your comparables have the same improvements, and there is no need to make an adjustment for that. But for a home use value, I put $70 an acre over-all on the whole tract, and on that basis my total value was $57,000, including improvements.

Q All right, sir. Now, directing your attention to the part that was taken on September 20, 1962, what is your opinion of the value of the part, 39.7 acres, taken, considered as severed land?

A Well, the portion—now, we have got to turn this map again. (Does so). Now, if you take the portion of land back to the point that I am pointing to here, which is the—at the end of the 12.4 acres—well, since we turned this upside down here, I am a little mixed-up here, but the land beginning at the north point of this 12.4 acres and extending out to the north end of this property consists of approximately 2700 lineal feet of highway frontage; and considering that on the basis of the area in there at $300 an acre, although it is a little deeper in one place and a little shallower here, that figuring that on the basis of $300 an acre and then considering the remainder strip comparable to that rear land at $150 an acres, the total value, then, would be $8400 for the land taken, and there was a little building in there that I allowed $250 for, which makes a total of $8650 for the part taken."

Further testimony was:

" MR. McCLAIN: $48,400?

A $48,350, which is just simply the difference in the 57,000 and the 8650 for the part taken. If you add the 8650 and the 48,350, you are back to the 57,000, the original price.

Q (By Mr. Patterson) Now, directing your attention to the remainder of Mr. Cocke's property just

after the taking, and excluding any community benefits or damages, but including any specific benefits or damages, could you appraise—but then in addition, considering the use to which the part taken is to be put, did you appraise the remainder in this manner?

A  Yes, sir.

Q  All right, sir. Did you find that there were any specific damages to Mr. Cocke's remainder?

A  Yes, sir.

Q  What were they?

A  I considered that the—although we are talking about this being available for sale for other uses, small tracts, still, until—in the interim until that is done, it is still going to be used as a stock farm and there are fences, there are field fences around that perimeter of this tract. After they have built the highway—now, I am assuming that the highway is then in there; so I considered that anybody buying a piece of land with fences on three sides would consider in his mind that he is going to have to put a fence across there to enclose that, whether it is temporary use, or farming, or whatever it is, I think it would be done. There is a little question there as to what the cost of that would be because of this creek down here, that there would probably be a little water gap down there. Actually, taking this as about 4200 feet of fence being required across this point, the main part here across from the house there in that area, I think that you could build a field fence —that is a five-barb fence; that is, anything that would be comparable to what was there—at about sixteen cents a foot, or build the kind of fence that was actually built there, would probably be about twenty cents a foot. But in any event, I think that a thousand dollars would be a maximum to replace the fence in this area and the fence that would be needed over here. Now, there was already a fence along this area on this twelve—west side of that 12.4-acre tract except this little strip; there had to be some addition made there of fence. Of course, this over here would not be affected in any way, but I think that was specific damages to the property caused by the building of the highway. That is the only specific damage, now, that I considered."

The witness on direct and on cross-examination gave extensive testimony as to how he arrived at the values he gave and as to the values of other properties in the general areas that he used for comparison.

The case was submitted to the jury on Special Issues.

In answer to Special Issue No. 1 the jury found that the market value of 39.7 acres of land, with all improvements thereon, considered as severed land immediately before the taking of such land was $8,650.00, and in answer to Special Issue No. 2 the jury found that the market value of the 180.31 acres of land immediately before the 39.7 acres was taken was $49,957.00, and in answer to Special Issue No. 3 the jury found that the market value of the 180.31 acres immediately after the taking of the 39.7 acres was $48,957.00.

Based on the verdict of the jury the court entered judgment for the sum of $9,650.00 and that pursuant to an award of Special Commissioners of $9,775.00 in condemnation, such was deposited in the registry of the court and had been withdrawn by appellants and that the jury verdict being for $125.00 less than the amount withdrawn the

**558**

plaintiff should pay the State the sum of $125.00 with interest at the rate of 6%, and the State was awarded fee simple title to the 39.700 acres of land, excluding all oil, gas and sulphur which can be removed.

■ The jury heard all of the testimony in the case and was at liberty to consider same and was not bound to accept such in exact accord, but could consider and resolve the facts as it found the facts to be, and we believe correctly.

Appellants' third point is founded on alleged jury misconduct in agreeing upon the amount of money they wanted to award plaintiffs and then deliberately endeavored to answer Special Issue No. 3 that would entitle the plaintiffs to only $1,000.00 damages.

This issue inquired as to the market value of the 180.31 acres after the taking of the 39.7 acres.

The evidence was conflicting as to the decrease in value of the remainder of the farm. Appellants' witnesses testified that it had decreased in value in amounts from $7,900.00 to $10,280.00. The witness testified that there was a net enhancement of $25,350.00, being the difference in after value of $73,700.00 and the before value of $45,350.00.

Mr. Legge testified that there was a specific damage because one side was left unfenced, that $1,000.00 would be the maximum cost.

The finding of the jury of $1,000.00 damages was within the range of the testimony and is therefore supported by evidence. State v. Haire, Tex.Civ.App., 334 S.W.2d 488, er. ref., n. r. e. Dyer v. State, Tex. Civ.App., 388 S.W.2d 226, n. w. h.

Finding no reversible error the judgment of the trial court is affirmed.

Affirmed.