TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,

v.

Olen H. DENNIS, Appellee.

No. 16458.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 25, 1963.

Rehearing Denied Nov. 22, 1963.

Henderson & Bryant and James E. Henderson, Sherman, for appellant.

Peery & Wilson and Bob L. Wilson, Wichita Falls, for appellee.

MASSEY, Chief Justice.

Olen H. Dennis, hereinafter termed plaintiff, recovered a judgment for total and permanent disability benefits under the Texas Workmen's Compensation Act against the Texas Employers' Insurance Association, hereinafter termed the Company, An appeal thereform has reached this court.

Judgment affirmed.

In view of the nature of the Company's appeal we do not have a question involving the matter of whether or not the plaintiff was entitled to compensation. His right thereto is impliedly conceded. What is a question is the nature and extent of plaintiff's injuries and the degree and permanence of the disability resulting therefrom.

The injury was to plaintiff's back. On August 21, 1961, while pulling on a "swab" he felt a pain and popping therein followed by a burning and stinging sensation. Three days thereafter he went to a doctor, who immediately caused him to be hospitalized in the Medical & Surgical Hospital, Gainesville, Texas. He remained there twenty-one days. After being out of the hospital a short time he was again hospitalized for three days, beginning November 7, 1961, in the Methodist Hospital of Dallas, Texas. Thereafter he again entered a hospital in December of 1961. During or immediately after this third period of hospitalization the Company ceased to pay weekly compensation and refused to pay further medical bills.

Claim procedure through the Industrial Accident Board of Texas was followed by trial before a jury in the District Court of Cooke County, and after judgment by the Company's appeal. The most material complaint on appeal relates to the question of whether certain portions of properly authenticated hospital records constituted improper "hearsay" evidence, not coming within the exception to the "hearsay rule" statutorily provided by Vernon's Ann.Tex. St. Art. 3737e, "Memorandum or record of act, event or condition * * *".

The most authoritative decision relative to the admission of hospital records as an exception to the "hearsay rule" within the meaning of Art. 3737e, "Memorandum or record of act, event or condition * * *", is Travis Life Insurance Company v. Rodriguez, 1959 (Tex.Civ.App., Austin), 326 S.W.2d 256, approved by the Supreme Court of Texas in a *per curiam* opinion at 160 Tex. 182, 328 S.W.2d 434. Generally, the holding of the Austin Court of Civil Appeals affirmed the admissibility of the hospital records, including the entries thereon of diagnostic recitations, upon the establishment of the authenticity of the records as prescribed by the statute. In the Rodriguez case the specific part of the hospital records to which an objection was leveled was the entry (or entries) of the diagnosis of leukemia, or chronic leukemia. The objection was grounded on the contention that reception in evidence of the diagnosis would be in violation of the rule against admitting "hearsay", that the exception to the "hearsay rule" provided by Art. 3737e did not embrace and include diagnostic entries, and that if this form of "hearsay" be admitted its allowance would amount to the jury's reception of inadmissible evidence which could not form the basis of a judgment.

Skillern & Sons, Inc. v. Rosen, 1962, Tex., 359 S.W.2d 298, did not overrule nor cast doubt of any kind upon the Rodriguez decision in relation to the matter in question. The Supreme Court, acknowledging the authority of Art. 3737e in respect to the reception of hospital records generally, held that such authority did not extend to the statement made thereon relative to Mrs. Rosen, viz.: " 'The patient slipped and fell at 5:30 p. m. while walking in the slushy snow in front of a local

drugstore.' " The reason why, said the Supreme Court, was because of the statutory provision that those admissible portions of hospital records must have been entries made by the hospital's employee or representative, in the regular course of its business, upon such agent's personal knowledge of such act, event or condition. It is of interest to note that the court, though holding the aforesaid entry inadmissible under Art. 3737e, held the entry admissible because it was offered by the defendant Skillern & Sons, Inc. and amounted to an admission against interest on the part of Mrs. Rosen, the plaintiff, in that it was inconsistent with her contention that she had fallen inside the defendant's store.

In a footnote at page 260 of the opinion of the Austin Court of Civil Appeals in the Rodriguez case (326 S.W.2d 256) the court stated that in a construction of Art. 3737e it did not appear (to the court) where a trial court had any authority to predicate a decision upon the admissibility of record entries on diagnostic findings, as part of the hospital records, upon whether the statement therein amounted to or consisted of something more or other than a mere opinion or a conclusion or of a diagnosis based upon a medical examination or findings of conditions not obvious or patently observable to persons generally. This was the exact statement upon an interpretation of Art. 3737e by the Houston Court of Civil Appeals in the case of Martinez v. Williams, 1958, 312 S.W.2d 742, 749. In the footnote the Austin Court favorably referred to a discussion of the question appearing in § 1262, McCormick and Ray, Texas Law of Evidence, 2nd Ed., a part of which reads as follows: "On the whole, however, it is believed that, even as to these controversial diagnoses, the majority view favoring admission is the more expedient one. It works for simplicity by making it unnecessary to draw a difficult line, itself provocative of doubt and dispute; it serves the modern policy of the free use of organizational records; and is not too burdensome on the

adversary *who may himself call the declarant and thus bring out, if he can, any weakness of the diagnosis.*" (Emphasis supplied.) This statement presupposes that such a declarant is alive and available for the purpose.

Of interest to a student of the question is an article by Roy M. Dies, Jr., in 38 Tex.Law Review 645, "Evidence—Admission in Evidence—Records—Hospitals—Diagnosis of Leukemia in Hospital Record Held Admissible Under Texas Business Records Act.". At page 649 the author states as follows: "To admit into evidence all diagnoses contained in properly qualified hospital records seems the clear mandate of the Texas Business Records Act." We agree. We are of the opinion that the Rodriguez case did effectively so hold, although the decision of the case had specific application to the diagnosis of leukemia. It is true that the opinion states that the diagnosis of leukemia is not one about which physicians ordinarily differ, but a court cannot know such a thing judicially. Certainly it could not become a matter for evidence in any case where as prerequisite for the court's decision upon admissibility, it would be called upon to resolve a fact question as to whether the tendered diagnostic entry in the records was upon a noncontroversial diagnosis, for resourceful counsel would rarely be unable to present testimony to the contrary.

In the instant case the Company objected to three specific portions of the records of the two different hospitals. The objections were overruled and these specific portions were admitted into evidence. The whole of the hospital records tendered by the plaintiff was admitted. The objections adequately embraced the Company's contention that the specific portions objected to were not admissible under Art. 3737e, and that despite the provisions of that statute amounted to "hearsay" and therefore inadmissible evidence. Under our interpretation of the holding in the Rodriguez

case, already discussed, we are of the opinion that the whole of the hospital records tendered were properly admitted, and that the specific portions thereof to which the Company leveled objection were not subject to exclusion from evidence on the complaint made.

We take occasion to explain that it was not the recitations of the specific portions of the hospital records themselves which reflected statements causing damage to the Company's case (see footnotes 1, 2 and 3), but the damage to the Company's case was rather the use thereof made by the plaintiff in making out his own case while his medical witness was testifying,—and the further use thereof made in the cross-examination of the Company's medical witnesses—combined with the use made of an authoritative publication of orthopedic surgeons. We do not have occasion to write fully in an explanation of the procedure for this would be immaterial if the admission of the questioned evidence was justified under the provisions of Art. 3737e. As we have already stated that is our holding in this case.

By several points the Company contends that reversible error occurred as the result of certain events during the period the jury was deliberating upon its verdict. Right to present the question or questions, was preserved by a bill of exceptions. After deliberating for a time, the jury requested the testimony of Dr. Driggs, a witness for the Company. The trial judge requested that the jury be more specific " * * * in regard to what part of the doctor's testimony you refer to". To this the Company made no objection. The jury, after further deliberation, sent a message to the court reading as follows: "Would like to

1. The first of the portions of hospital records as to which an objection was leveled was in those of the Medical & Surgical Hospital, Gainesville, Texas. In August, 1961 an x-ray examination was ordered to be made by Dr. McLeroy, the plaintiff's treating physician. X-ray was taken and a reading made thereof by a Dr. Edwin S. Peeke. (It is to be noted that the Company objects and points out that the fact that Peeke was a doctor, a roentgenologist, is nowhere established). The report of the x-ray reading was made a part of the hospital records. Under the "findings" of the report it is recited: "Lumbar-sacral spine series. In this study we note that there is an apparent depression in the superior end plate of the body of L2. If this can be confirmed we may well be dealing with a ruptured nucleus pulpossis. /s/ Dr. Edwin S. Peeke."

2. After the plaintiff was a patient in the hospital at Gainesville he entered the Methodist Hospital of Dallas. While in this hospital a myelogram examination was directed, made, and a report of the findings therefrom was made a part of the records of the hospital. It read as follows: "11–8–61. Routine lumbar myelograms show no evidence of any lesion in the lower lumbar region except that the left nerve root sleeve at the lumbosacral joint does not fill. There is no obvious defect here so that this very, very minor variation must be interpreted in the light of clinical evidence. There is no evidence of any bony abnormality of the lower lumbar region.

"IMPRESSION: 1. Failure of the left nerve root sleeve to fill at the lumbosacral joint as described above. Lumbar myelogram otherwise negative. Significance of this minimal finding to depend entirely on clinical findings. /s/ R. H. Millwee, M. D. 11–8–61 Radiologist."

3. A "discharge summary" was made a part of the hospital records of the Methodist Hospital of Dallas. It read as follows: "DISCHARGE SUMMARY: Dennis, Mr. Olen H. 358389. This 30-year-old, white male was admitted to DMH on 11–7–61 with a two-month history of low back pain which began after lifting a heavy object in the oil field. He had been treated in Gainesville prior to the admission to this hospital for possible herniated lumbar disc.

"Physical examination: The patient complained of low back pain and had increased pain in the low back area on straight-leg-raising. The diagnosis on myelogram read 'Failure of left nerve root sleeve to fill at the lumbosacral joint. Lumbar myelogram otherwise negative. Significance of this minimal finding depends entirely upon clinical findings.'

"The patient was discharged on 11–10–61 with the diagnosis of low back strain. /s/ J. F. Hudnall, M. D. 1–6–62."

have Dr. Driggs finding of Mr. Dennis last exam and ans. to cross exam on same". In reply, and over the objection of the Company's attorney, the trial judge replied to the jury, as follows: "It will take some time for the reporter to look through his notes and find this particular examination on this subject matter. We have a non-jury docket set in Denton tomorrow and I will have to be in Court there to handle this Court business. We can have this testimony for you on Monday morning at 9:00 o'clock. Do you desire to continue your deliberations on this case further today or would you prefer to come back Monday morning and continue your deliberations on this case?" The objection of the Company's attorney was that the language of the court in the above communication amounted to coercion of the jury to arrive at a verdict without benefit of the testimony it had requested. The objection was timely made before the communication was delivered to the jury. The objection was overruled. The jury returned its verdict, finding that plaintiff was totally and permanently disabled, about forty minutes later without having received the benefit of the testimony requested.

█ We overrule the Company's contentions made on the point of error. We believe this is the correct conclusion on our part in view of the harmless error rule. Under either Texas Rules of Civil Procedure 327, "For Misconduct", or under T.R.C.P. 434, "If Judgment Reversed", and T.R.C.P. 503, "May Remand", it seems to us that in order for the Company to discharge the burden incumbent upon it to sustain its complaint it would be obliged to make it reasonably appear that an injury to it probably resulted from the communication from the trial judge received by the jury, or because of the jury's action in arriving at a verdict without the requested testimony. There is nothing in the record from any juror concerning the matter, and there was no testimony offered by the Company on the hearing of any motion for new trial, or for purposes of any bill of ex-

ceptions. The Company must be held to have failed to establish that the event complained of actually resulted to its prejudice. Furthermore, for like reasons the Company has failed to establish that the event even amounted to error on the part of either the court or the jury. We believe that the writer's thinking in a situation having analogy is more fully expressed in Ambrose & Company v. Booth, 1957 (Tex.Civ.App., Fort Worth), 301 S.W.2d 223, writ ref., n. r. e.

By a final group of points the Company actually complains because of certain tactics on the part of counsel for the plaintiff, although the points relate to error in the admission of testimony. The complaint is in connection with testimony adduced from Kenneth Davey, an attorney who had a certain acquaintance with a Dr. Patterson, one of the Company's medical witnesses. Summarized, the complaint is because the trial court permitted Davey to testify as to the amount of Dr. Patterson's practice for various insurance companies, when he could have no valid basis for knowledge of such matters; permitted him to testify that he would not send claimants to the doctor if he could avoid it; and permitted him to testify as an alleged expert on matters that were not properly a subject of expert testimony.

During his cross-examination Dr. Patterson had testified that he had found no disabling condition upon the examination he made of plaintiff at the request of the Company. He affirmed the fact that nine out of the ten insurance companies named to him were companies for which he had done work. He further agreed that he had testified for some of them. He was never asked whether he did work for insurance companies exclusively, nor as to what percentage of his practice was in behalf of such companies. He was never asked whether, in connection with such work, he ever examined a person who was or claimed to have been injured and then appeared upon a trial to testify in behalf of the insurance company.

■ Without any objection the witness Davey testified on direct examination by the plaintiff's attorney that he was acquainted with the fact that Dr. Patterson, along with another with whom he was associated, worked for insurance companies "practically exclusively". On cross-examination Davey's testimony revealed that his testimony on direct examination amounted to a mere opinion and conclusion and was furthermore predicated upon a premise which had no proper foundation. Nevertheless, the Company's attorney made no motion to strike Davey's testimony which we believe to have been improper as constituting a mere opinion and conclusion he was incompetent to express.

■ The testimony could not have been for purposes of impeachment for no predicate therefor existed. It was not proper evidence, either original or rebuttal. Upon objection it should and probably would have been excluded. Upon the development by way of cross-examination it would have been properly stricken upon motion. There was no objection and there was no motion to strike. Under these circumstances any error existent under the circumstances must be treated as waived.

■ Over an objection that the testimony had no bearing or relevancy to any issue on trial Davey was permitted to testify on direct examination that he, personally, in connection with his practice as a plaintiff's attorney, had in the past had clients whom he had sent to Dr. Patterson at the behest of adversely interested insurance companies; that thereafter Dr. Patterson had appeared upon the trial of the cases of some of such clients to testify "against them" in behalf of the insurance companies for whom he had examined them; and that he, Davey, would always try to avoid sending any client to be examined by Dr. Patterson or his partner at the behest of any insurance company if he could avoid so doing. The testimony should have been excluded, even under the objection made. It was improper, serving only to show the witness' bias and prejudice generally against Dr. Patterson in connection with matters wholly unrelated to the issues on trial. Nevertheless, we are of the opinion that the circumstances shown, standing alone, do not present a case of reversible error. The error must be held to be "harmless error" and the Company must be held to have failed to establish that the event complained of actually resulted to its prejudice. T.R.C.P. 434, "If Judgment Reversed"; Goforth v. Alvey, 1954, 153 Tex. 449, 271 S.W.2d 404.

Judgment is affirmed.