**Billy Earl LOPER, Petitioner,**

v.

**Lula ANDREWS, Individually and as next friend of Charles Andrews, a minor, Respondent.**

**No. A–11188.**

Supreme Court of Texas.

May 25, 1966.

Rehearing Denied July 13, 1966.

---

Jones, Boyd, Westbrook & Lovelace, L. Wayne Scott, Waco, an appeal with above firm, for petitioner.

Reagan & Welch, Thomas Bartlett, Marlin, with above firm, for respondent.

STEAKLEY, Justice.

■ We granted writ of error in this case to review the problem of the admissibility under Article 3737e [1] of medical opinion entries in hospital records. Initially, however, we consider the view of the Court of Civil Appeals [395 S.W.2d 873] that the objection leveled at the records here involved was insufficient to preserve this point for review.

The following résumé will present the two problems. Respondent, individually, and as next friend for Charles Andrews, sued Petitioner in a personal injury action for damages resulting from an automobile collision. Judgment in her favor was affirmed by the Court of Civil Appeals. A controlling question for reasons later discussed was whether the boy suffered a skull fracture in the accident. Dr. R. B. Swetland was the treating physician and through him Respondent offered in evidence certain hospital records, the entries of which were made over his signature. The entry in question read: "I have referred him to Dr. Hutchings for examination and again he finds a papilledema of the left optic disc

of about two diopters. This, he believes, is definitely the result of a fracture of the base of the skull, and some left optic nerve pressure. This [is] probably attributable to the automobile accident suffered October 5, 1963."

When the hospital records were tendered by counsel for Respondent to counsel for Petitioner, the latter stated to the trial court, "If the court please, with the exception of one thing, I would agree. * * * I object to this as not being an opinion of the doctor himself. Just this one sentence here. I object to that one sentence. Otherwise I don't have any objection. * * * I object because it is the opinion of another doctor." Later, upon the actual offer of the records, counsel for Petitioner in making his objection read the entry in question to Dr. Swetland, who was on the witness stand, and this colloquy follows: Question: "That sentence includes the opinion of Dr. Hutchings?" Answer: "Yes." Question: "What he told you?" Answer: "Yes, sir." Thereupon this objection was stated: "We object to that portion of these records. I have no objection to the rest of it. I object on the basis that although it is a hospital record, it includes the opinion of another doctor not here for cross-examination. And, if I understand the law correctly, medical records are admissible so long as they do not contain opinion of a doctor not present and subject to cross-examination. I have no objection to the rest. * * *"

The only sentence in the entry carrying an opinion of Dr. Hutchings is the sentence, "This, he believes, is definitely the result of a fracture of the base of the skull, and some left optic nerve pressure." The previous sentence, "I have referred him to Dr. Hutchings for examination, and again he finds a papilledema of the left optic disc of about two diopters" is a statement of a factual finding. The final sentence, "This [is] probably attributable to the automobile

---

1. The reference is to the Article number as carried in Vernon's Annotated Texas Civil Statutes.

accident suffered October 5, 1963" does not purport to be the statement of Dr. Hutchings.

We will regard the objection as sufficient, although we recognize with the Court of Civil Appeals that it is subject to some doubt whether the objection pointed the court and opposing counsel to the question of whether the record, otherwise admissible under Article 3737e notwithstanding its hearsay nature, was rendered inadmissible to the extent of the opinion entry attributed to Dr. Hutchings. In Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298 (Tex.Sup.1962), there was only the general objection "that the records were not properly proven up, and that they were hearsay," but we wrote upon the question of the admissibility of a hospital record containing an entry not within the personal knowledge of the hospital personnel.

█ Certain other preliminary matters will be noted. Counsel for Petitioner stated in oral argument that the statutory predicate is satisfied here, i. e., both Dr. Swetland and Dr. Hutchings were members of the hospital staff. Nor is any point made that it was not the regular procedure of the hospital for a staff physician such as Dr. Swetland to refer a patient for a particular examination and diagnosis to another staff member such as Dr. Hutchings, and for the latter to transmit his diagnosis for recordation in the hospital records. It is settled that Article 3737e applies to hospital records and that the statute creates an exception to the hearsay rule deemed justified notwithstanding the deprivation of the right of cross-examination.

We turn to the problem of the case. Article 3737e, as here pertinent, provides:

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

"(a) It was made in the regular course of business;

"(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

"(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

\*    \*    \*    \*    \*    \*

"Sec. 4. 'Business' as used in this Act includes any and every kind of regular organized activity whether conducted for profit or not."

There are two direct expressions by this Court construing Article 3737e with respect to hospital records. In refusing the application for writ of error in Travis Life Insurance Co. v. Rodriguez, Tex.Civ.App., 326 S.W.2d 256 (1959), we said by per curiam opinion, 160 Tex. 182, 328 S.W.2d 434: "It is our view that the statute has been correctly construed by that court \* \* \*." Against a hearsay objection, the Court of Civil Appeals construed Article 3737e "so as to authorize the admission in evidence of the hospital records, including the diagnosis of leukemia shown thereon, proved and admitted in evidence in this case." The opinion clearly rested on the assumed fact that a diagnosis of leukemia is not one about which physicians ordinarily differ. So the problem of the admissibility of hospital records containing diagnoses resting substantially on the expert opinion of a doctor and partaking of controversy was not reached. See Murray, Admissibility of Hospital Records—A Continuing Problem, 29 Tex.B.J. 163, 211 (1966).

In Skillern & Sons, Inc. v. Rosen, supra, we said: "Some employee or representative

who either made the record or transmitted the information to another to record must have had personal knowledge of the act, event or condition in order for such record to be admissible under the business records exception to the hearsay rule." The statutory requirement of personal knowledge, apparently unique to the Texas statute, was held to exclude a statement in a hospital record from an outside source—a volunteer —as to how the accident happened. This does not reach our problem here since Dr. Swetland and Dr. Hutchings were members of the hospital staff and were acting in accordance with the regular procedure of the hospital.

It appears that the Courts of Civil Appeals have under various circumstances construed our per curiam opinion in *Rodriguez* as a holding that hospital records containing disputable opinion entries are admissible under Article 3737e. See State Automobile & Casualty Underwriters v. Reagan, Tex.Civ.App., 337 S.W.2d 522 (1960, no writ hist.); Missouri-Pacific R. Co. v. Watson, Tex.Civ.App., 346 S.W.2d 640 (1961, writ ref. n. r. e.); White v. McElroy, Tex. Civ.App., 350 S.W.2d 249 (1961, writ ref. n. r. e.); Western Fire Indemnity Co. v. Bradshaw, Tex.Civ.App., 356 S.W.2d 832 (1962, writ ref. n. r. e.); Texas Employers' Ins. Ass'n v. Dennis, Tex.Civ.App., 372 S.W.2d 559 (1963, writ ref. n. r. e.); Weaver v. Swofford, Tex.Civ.App., 386 S.W.2d 624 (1965, no writ hist.); Goshorn v. Hattman, Tex.Civ.App., 387 S.W.2d 422 (1965, writ ref. n. r. e.); St. Paul Fire & Marine Ins. Co. v. Haynie, Tex.Civ.App., 389 S.W. 2d 488 (1965, no writ hist.). The opinion of the Court of Civil Appeals in *Watson* is representative; it was there said: "We conclude, however, that the opinion and the Supreme Court's approval of the opinion [referring to Rodriguez] may not be so limited

[that diagnostic reports are admissible only in cases where the diagnosis is one about which physicians do not ordinarily differ]." The Court of Civil Appeals, however, then held that "The exclusion of the diagnostic report in any event was harmless" with which we were in agreement. So our refusal of the application for writ of error with the notation, "no reversible error," reserved the question. The same reservation and for the same reason is implicit in our refusal of the application for writ of error in the other cases listed above.

Prior to *Rodriguez*, it was held in Martinez v. Williams, 312 S.W.2d 742 (Tex. Civ.App. 1958, no writ hist.), that the statement by a physician consisting of an opinion based upon medical findings of conditions not obvious or patently observable to persons generally should be excluded; and that in such a case the doctor should be brought into court where he would be subject to cross-examination by opposing counsel. *Martinez* did not come to this Court for review but was followed in Texas Employers' Ins. Ass'n v. Odom, 371 S.W.2d 429 (Tex.Civ.App.1963, writ ref. n. r. e.). In *Odom*, however, the Court also held the admission of the records harmless in view of the personal testimony at the trial of the same doctor whose opinion was carried in the hospital records under attack.

Aricle 3737e says that a record of an act, event or condition shall be competent evidence of the occurrence of the act or event *or the existence of the condition* when the statutory conditions to admissibility are otherwise present. The problem here is whether the recorded entry of a medical diagnosis can qualify as a memorandum or record of a condition and as competent evidence of the existence of the condition described therein.[2] Medical diagnoses

2. Cf., Thomas v. Hogan, 308 F.2d 355, 360–361 (4th Cir. 1962), where the Court said:
   "We read the statute as applying a presumption that diagnoses and scientific tests are properly made by qualified personnel, if the recorded information reflects usual routine of the hospital and if it is the practice to record such data contemporaneously or within a reasonable time. For example, a recorded diagnosis that a patient had pneumonia would be admissible, but a diagnosis of a rare disease might not, since it would not be one

analyze the cause and nature of a patient's condition and may be classified into three broad types. The medical facts may be such that the medical condition is apparent and observable by all. Or, the facts and findings may be such that an expert interpretation is required but the medical condition is nevertheless well recognized and reasonably certain. Or, the facts and findings may be such that their meaning and the resulting medical opinion as to the patient's condition rests primarily in expert medical opinion, conjecture and speculation. A severed limb or an open wound illustrates the first and states the obvious. The diagnosis of leukemia in *Rodriguez* illustrates the second. Leukemia was considered to be an affliction subject to reliable diagnosis and as not partaking of opinion or conjecture in any consequential sense. We were of the view that such a recorded diagnosis could properly be said to be within the statutory contemplation of a record of a condition and as competent evidence of the existence of the condition. A third situation is represented by the opinion entry here and was also illustrated by references in the *Rodriguez* opinion to consideration of the problem in other cases. In approving the *Rodriguez* construction of the statute we did not hold that diagnostic entries in hospital records may be considered as competent evidence of the condition they describe where they are genuinely disputed and necessarily rest largely in expert opinion, speculation or conjecture.

■ A witness is generally permitted to testify only to facts within his personal knowledge. He does not have to possess special qualifications to do so. He is not permitted to express an opinion since this invades the province of the trier of the facts. An exception to the personal knowledge prerequisite is represented by the testimony of a qualified expert in the expression of an opinion in the field of his qualifications. This is permitted because experts are considered to have a special knowledge not generally possessed by jurors and are better able to draw conclusions from the facts than the jurors. The diagnosis or medical opinion of a doctor is an example. Such testimony is in the nature of an expert opinion based on the application of the expertise of the doctor to the facts within his knowledge. The opportunity of cross-examination is unusually important to adversely affected parties. We do not read Article 3737e as purporting to render entries of such character admissible without exception; we construe the statute as doing so only in those instances where it can be said that the diagnosis records a condition resting in reasonable medical certainty.

■ The opinion and conjectural nature of the important sentence in the entry in question here is self-evident. The finding is that the boy suffered a "papilledema of the left optic disc of about two diopters." The medical opinion attributed to Dr. Hutchings is that "he believes" that such condition resulted from "a fracture of the base of the skull, and some left optic nerve pressure." The entry does not purport to rest upon demonstrable medical facts and was the subject of genuine dispute between the doctors. It is an expert conjecture of Dr. Hutchings on the question of whether or not the boy suffered a skull fracture and in our view is lacking the requisite medical certainty to qualify under Article 3737e.

routinely made by the hospital personnel. Likewise, a record entry of a commonly performed blood test would be admissible, while an entry of the result of a scientific test infrequently done might not. When the two statutory requirements have been met, it makes no difference whether the record reflects an expression of medical opinion or an observation of objective fact. As said by Judge Parker in Long v. United States, 59 F.2d 602, 603 (4th Cir.1932):

"'The diagnosis is the opinion of a scientific expert who has examined [a patient], heard his statements, and observed his symptoms. It approximates a statement of fact, being in reality what the physician observes when he views [a patient] with the trained eye of an expert.'"

We are of the further opinion, however, that the admission in evidence of the hospital record with the inadmissible opinion entry of Dr. Hutchings was not reversibly harmful to Petitioner under Rule 434, Texas Rules of Civil Procedure. This follows from an analysis of the crucial issue in the case and the evidence relating thereto. The boy was involved in the automobile accident in question and was thereafter found to be suffering from a vision impairment and related symptoms. It was shown and appeared not to have been disputed that the indicated fracture of the skull would cause the vision impairment. It was further established that for the accident to have caused the vision impairment the boy must have sustained a blow at the base of the skull causing a skull fracture. The skull fracture would cause the formation of scar tissue and the building up of intercranial pressure which, in turn, would cause damage to the optic nerve resulting in the vision impairment. The crucial question thus became whether or not the boy sustained a skull fracture in the accident. If he did, the accident was the cause of the vision impairment. Dr. Swetland was the only doctor who personally testified on this issue in the trial of the case. It was his opinion that the injury to the boy was "from a blow at the floor of the skull that at the time of this accident Charles had in the accident and the concussion which he had. * * * that there was some hemorrhaging somewhere along the optic nerve that supplied the left eye. And that this persisted in the formation of scar tissue. That this scar tissue is present now, causing a pressure on the optic nerve, and also causing a pressure on the venules drainage of the eye." He admitted on cross-examination, however, that the vision impairment such as that suffered by the boy could have been the result of a birth defect not necessarily connected with the injury suffered in the automobile accident. It was Dr. Swetland's theory that the accident could have been the producing cause of the optic nerve damage only if the boy received a skull frac-ture sufficient to form scar tissue. In an effort to determine the existence or not of a skull fracture Dr. Swetland referred the boy to two doctors for examination and study. One was Dr. Hutchings; the other was Dr. J. A. Pettigrew, a neurosurgeon. Dr. Pettigrew's report, which was offered in evidence by Petitioner, carried the entry "Neurological examination is negative." Dr. Swetland stated that this meant that Dr. Pettigrew did not find optic nerve damage or damage to the nerve pathways within the brain system and was, in effect, a finding that the boy had not suffered a skull fracture. In summary, the jury heard the personal testimony and opinion of Dr. Swetland that the boy suffered a skull fracture in the accident which under the medical testimony was the cause of the injury from which the boy was suffering. Dr. Pettigrew reported that he could not find evidence of a skull fracture; a contrary report was that of Dr. Hutchings. Thus there was a standoff between the two reports received in evidence and the diagnoses of the two referral doctors shown by the reports. It would necessarily follow, in our opinion, that the controlling influence on the jury was the expert testimony of Dr. Swetland who testified in person and was subjected to direct and cross-examination. It is not reasonably probable that the opinion entry attributed to Dr. Hutchings persuaded the jury to its verdict when it was offset by the report of Dr. Pettigrew and when the matter was developed in great detail by the personal testimony of Dr. Swetland before the jury.

We agree with the disposition by the Court of Civil Appeals of Petitioner's other points of error and its judgment is affirmed.

POPE, Justice (concurring).

Dr. Hutchings, a member of the hospital staff, examined the injured boy upon request of Dr. Swetland, another staff member. In recording the results of the examination, Dr. Swetland wrote the one sentence which is the subject of this appeal. That sentence was: "This, he (Dr. Hutch-

ings) believes, is definitely the result of a fracture of the base of the skull, and some left optic nerve pressure." As stated in the majority opinion, nothing else in the hospital record was objectionable.

The majority, in holding that opinion testimony should be excluded, has announced a new exclusionary rule with respect to medical opinions. The Court treats expert medical opinion as speculation or conjecture in spite of medical evidence to the contrary. The majority says that because there was a dispute between the doctors who examined the injured boy, the diagnostic entries "necessarily rest largely in expert opinion, speculation or conjecture."

When a doctor gives his expert opinion about medical causes lawyers and judges, who are not medical experts, are bold indeed to say that the evidence is mere conjecture or speculation. Dr. Swetland's entry in the hospital records was that Dr. Hutchings " * * * believes * * * definitely * * * " that the condition resulted from a fracture of the base of the skull. The evidence did not relate to the future, in which case the doctor would be limited to probabilities in the expression of his opinion. We exclude this evidence though the doctor said, "I definitely believe." The predicate for admission of this opinion evidence was laid.

The real basis for the exclusion is that the non-expert Court believes that the evidence was speculative. If it be such, Dr. Swetland and Dr. Hutchings did not so state. The Court in this case, and apparently for the future, has committed itself as an overseeing expert to pass upon medical conditions, diseases, treatments, prognoses, and to announce to both the medical and legal professions, which medical opinions are sound and which are conjectural. I would leave this to the doctors. 2 McCormick & Ray, Texas Law of Evidence, § 1427.

I concur in the result.

SMITH, J., joins in this opinion.