Cody Ray HUTSON, Appellant,

v.

SEARCH DRILLING COMPANY,
INC., Appellee.

No. 18646.

Court of Appeals of Texas,
Fort Worth.

June 24, 1982.

Rehearing Denied July 22, 1982.

W. W. Weir, Midland, for appellant.

Stan Carter, Wichita Falls, for appellee.

Before MASSEY, C. J., and SPURLOCK and HOLMAN, JJ.

OPINION

MASSEY, Chief Justice.

As plaintiff, Cody Ray Hutson brought suit against defendant Search Drilling Company, Inc. for personal injuries sustained when, in the performance of duties as a member of a "casing crew" company employed as an independent contractor to run drilling pipe into a well of the drilling company, the Drilling Company's equipment, in use in the casing operation, struck and injured him. Hutson alleged, among other things, that Drilling Company was negligent, through its agents, servants, or employees, in failing to keep a proper lookout for his safety.

Following jury trial a judgment that Hutson take nothing by his suit was rendered upon the jury's verdict. Therefrom he appealed.

Reversed; cause remanded for another trial. Because the charge denied opportunity to the jury to find for Hutson on a special issue supported by evidence under his pleadings and because such an opportunity would have been afforded, had Hutson's specially requested special issue been submitted and not denied, we hold there was reversible error.

The operation taking place at the premises and rig of Drilling Company was that of running casing (four and one-half inch production pipe) into the well-hole. In this operation the casing is rolled onto a plat-

form or "catwalk" at one side of the rig, one section at a time. By "elevators", a gripping device clamped onto each section at the end nearest the rig, casing is secured so that the end seized may be lifted by a cable and dragged toward the rig and upward into the top portion of the same so that the rear-end, or off-end, drags along the "catwalk" until it gradually moves to the perpendicular and then completely free and in position where the off-end is immediately above the well-hole and any casing already inserted in the hole. At this point such off-end is maneuvered into position where—by its threading at such end—it may be screwed into and safely attached to the casing already in the hole. With this accomplished the entire length of pipe thus joined, and already joined below and lowered into the hole, may be lowered further.

On the occasion in question, however, such an operation was never completed. The "elevators" were clamped to the end of a section of casing pipe. The Drilling Company's operation of the draw-works machinery, which tightened the cable in order to lift the end nearest the rig and then draw the casing so that it might drag along the catwalk, began the process of moving this last-mentioned joint of casing towards its intended destination. At this point, the off-end of the section became caught so that it ceased its forward sliding movement. The cable and the "draw-works" near its upper end was observed to tighten improperly and thus cause the near end of the casing to "rear up", all as a result of the cessation of the anticipated sliding movement as the off-end of the pipe section moved—or was supposed to move—toward the rig. This was observed by Drilling Company's driller, the man operating the "draw-works" machinery, as well as by other employees working during the casing operation in question. The driller immediately "applied the brakes" to stop such process of movement. However, all present then observed that whatever it was which had occasioned the stoppage of the off-end of the section of pipe released and lost its operative force and therefore allowed the rapid movement of the pipe toward the rig. The weight of the pipe and machinery to which it was attached, coupled with the rapidity of movement, created a dangerous situation to any person or thing in the direction of the movement.

The obvious danger to the employees located on the floor of the drilling rig caused them to react and evacuate with great haste; however, Hutson was the person in the direction toward which all the foregoing moved and was not similarly free to take evasive action. He was in the proper place for performance of his task of "stabber" during the operation being conducted, which was approximately 40 feet above the floor in the derrick at a platform where he would supply aid for positioning (or "stabbing") the casing for attachment to casing already in the hole. He was struck and severely injured.

There was immediate investigation by nearly all present, employees of Drilling Company and of the independent contractor by which Hutson was employed. Discovered was a "rent" on the surface of the "catwalk", running lengthwise approximately 2 feet and between 1 and 3 inches wide, with the metal at the side pulled up or curled up. There was nothing else to be observed which could have played a part in the stoppage or cessation of movement by the section of casing.

The "catwalk" was constructed by the welding of two pieces of iron, each 4 feet in width, so that an 8 foot wide platform was resultant, of sufficient length to afford efficient space for a section of casing to be rolled onto it to be attached by "elevators" for the initiation of the process described above. There was no evidence of anything to have caused the condition immediately before the last section of casing was rolled onto the "catwalk". Without its presence, at least in some degree, the event resulting in the injuries sustained by Hutson would not have occurred on the occasion.

The nature of the conduct of trial by Hutson was directed to showing the above,

matter not in dispute, plus evidence that Drilling Company through one or more of its employees, including but not confined to its driller who was operating the machinery to move and elevate the casing, should in the exercise of ordinary care have kept a proper lookout sufficient to have discovered the existence of the defect and in light thereof have prevented the physical action resulting in Hutson's injuries or to have so altered operations so that injury to anyone would be avoided despite its existence.

Over the objection of Hutson the trial court submitted its Special Issue # 1, reading as follows:

"Do you find from a preponderance of the evidence that on the occasion in question that under the circumstances Search Drilling Company, Inc., acting through its draw works operator, Mr. Billy Spencer, was negligent, as that term is defined herein, in the lookout he was keeping of the moving equipment under his control?"

The trial court overruled Hutson's objections and exceptions taken thereto. Part of Hutson's objections were that "said issue is a mere shade and phase of the overall lookout issue which should be submitted to the jury in this case. The court is urged that the testimony elicited during the trial clearly indicates that not only did the agent of the Defendant, Billy Spencer, have a duty, a recognized and stated duty to inspect for and keep a lookout for any dangers or potential dangers with regard to this rig, but moreover, other employees, in fact all employees of the Defendant and in particular its employees on Mr. Spencer's crew, had this same duty to keep a proper lookout for the safety of the Plaintiff and other people on said location, and that all members of the Defendant's crew and all agents or servants of the Defendant, were under the same duty and responsibility to keep a lookout for any potential hazard on the location."

■ Then Hutson made and submitted to the court the following Specially Requested Special Issue # 1, reading as follows:

"Do you find from a preponderance of the evidence that on the occasion in ques-

tion that under the circumstances Search Drilling Company, Inc., acting through its employees, was negligent as that term is defined herein in the lookout they were keeping of the equipment under their control?"

The trial court refused to submit such Specially Requested Special Issue. The refusal is made the first point of error presented on appeal, the complaint being that the issue which the court did submit failed to inquire about any negligence in respect to Drilling Company's lookout save by its driller, Spencer, and that only about the "moving parts" of the rig, when there was support by pleading and evidence which raised an issue of fact about failure to keep a proper lookout by Spencer and/or any and all other employees of Drilling Company who were present; and, furthermore, when there was support by pleading and evidence which raised an issue of fact about their failure to keep a proper lookout relative to all parts of the rig, not merely "moving parts". The contention is that the specially requested issue was in substantially correct wording and one which would have fairly submitted issues of fact raised by the pleading and evidence upon which there was reliance; that refusal to submit it deprived Hutson of his right to have the cause submitted upon special issues controlling the disposition of the case, such issues having been raised by the written pleadings and the evidence and the case one by which there was submission to the jury upon special issues. Tex.R.Civ.P. 277, "Special Issues".

We have examined the pleadings as well as the evidence, and we agree with Hutson that the submitted special issue on Drilling Company's liability deprived him of ground pleaded in respect to negligence in failure to keep a proper lookout, amounting to proximate cause, and sufficiently proved to raise the issue for submission. We likewise agree with Hutson that the specially requested issue, had it been given, would have afforded him submission to which he was entitled.

We readily understand the jury's refusal to find Drilling Company's driller, Spencer, negligent in the lookout he was keeping of the moving equipment. To have found him negligent would certainly have given rise to Drilling Company's complaint as an appellant that the finding was so contrary to the greater weight and preponderance of the evidence as to have been clearly erroneous. Spencer, who was located some fifty feet from the "catwalk", probably could not have been held to have been negligent in the respect about which there was inquiry by the special issue yet there was substantial evidence that the same man should have taken occasion to look to see that there was nothing on the platform or "catwalk" to interfere with proper slippage of the off-end of the casing being moved along the surface thereof, and, further, that if he had looked he would in all reasonable probability have observed the defect earlier described, at least in some degree. It was certainly present when the casing "hung", though when the casing broke loose from the obstruction there might have been enhancement.

Mr. George H. Jett, at the material time the Vice-President in charge of all operations of the drilling rigs and field operations of Drilling Company, testified relative to what was expected of employees pursuant to duties at an operation such as the one where Hutson sustained his injuries. His testimony was that he did not expect the driller to check everything that might go wrong at the beginning of each tower (tour of duty of a crew reporting to begin a period of work at a drilling rig); but that he was expected to check the oil, check the moving parts and that part of it. He continued, as follows: "The rest of it you expect the roustabout or the roughnecks as they go along to clean it up and when they clean it up you expect them to find anything that needs to be repaired." One or more persons working with driller Spencer on the occasion in question were in better position to have discovered the defect in the floor of the "catwalk" (in which was the rent or hole at the point where the pipe casing hung) and these were the Drilling Company employees to which the witness Jett made reference. These were crewmen Rutledge, Pitts, and Fox. None testified to observation of the defect in question prior to Hutson's injury. Its presence was apparent and observed immediately following. The jury was entitled, by the evidence, to find the defect existant at an earlier time, and to also find one or more of the Drilling Company's employees negligent in not having seen the defect during the course of the operation.

We hold that by denial of Hutson's specially requested issue he was denied fair submission of his case. This we hold because had such issue been submitted and answered favorably to him, with like favorable finding to the issue on proximate cause requested along with it, he would have been entitled to judgment for his damages elsewhere found by the jury. Hutson was harmed by denial of the specially requested issue.

■ In a second point of error, Hutson complains of the trial court's exclusion of testimony from Drilling Company's employees working on the rig with Hutson regarding their opinions as to the cause of the accident. This question is susceptible to being raised upon retrial.

These were the employees of Drilling Company previously mentioned as having allegedly been shown to have been negligent by failing to keep proper lookout during the procedure. Their excluded opinions were generally to the effect that the event described was caused by the catching of the thread protector on the last piece of casing in the aforementioned "split" in the "catwalk". Hutson offered their opinions as those of experts by force of the fact that the men had worked as roughnecks and drillers on other rigs. By the nature of the tender we hold there was no error in excluding the testimony. *Loper v. Andrews,* 404 S.W.2d 300, 305 (Tex.1966); *Montgomery Ward and Co. v. Marvin Riggs Co.,* 584 S.W.2d 863, 868 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.).

Judgment is reversed, with the cause remanded for another trial.

HOLMAN, J., dissenting.

HOLMAN, Justice, dissenting.

I respectfully dissent, but only from that portion of the majority opinion which sustains the first point of error. I would overrule that point, concur in the portion of the majority opinion that overrules the second point, and would affirm the judgment.

Appellant's first point complains of the trial court's refusal to submit a broader special issue. The refused issue would have asked the jury to decide whether the appellee was negligent because "its employees" failed to keep a proper lookout during the activity in which appellant was injured.

At the time of injury, appellant was employed by an independent contractor hired by appellee to place production casing in appellee's oil well.

Billy Spencer was appellee's driller. His duty was to maintain the entire rig in proper working order. He also was assigned to assist appellant's casing crew by operating the pulleys, called blocks, and an attached device known as elevators, which lift the pipes up into the derrick.

Appellant was injured when a joint of pipe being dragged by the pulleys encountered an obstruction. No eyewitness saw the exact cause of the obstruction, but when Spencer realized the pipe was hung, he applied brakes to the pulley system. When the brakes were applied, the pipe swung into appellant's leg, injuring it.

Witnesses at trial theorized that the pipe may have become caught on a split in the surface of a catwalk as the pipe was dragged across it.

We do not know whether Spencer would have detected the flaw in the catwalk if he had inspected it just before he began to drag the pipe. Whether the split occurred before or during the dragging operation is not in the record.

However, the issue requested by appellant, and refused by the trial court, does not ask about a failure to inspect for defects.

The trial court submitted the controlling issue made by the written pleadings and the evidence, that is, whether Spencer failed to keep a proper lookout while operating the blocks and elevators.

A trial court has the discretion either to submit issues broadly or to submit separate questions on each element of the case. Tex.R.Civ.P. 277. However, the rule requires only the submission of controlling issues.

We should not reverse the case for the trial court's failure to submit other and various shades or different shades of the same issue. Tex.R.Civ.P. 279. It was within the trial court's discretion to deny the issue requested by appellant.

I would hold that the refusal to grant the issue requested by appellant did not amount to such a denial of his rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment. The judgment therefore should not be reversed. Tex.R.Civ.P. 434.

For these reasons, I would affirm.