## PILOT LIFE INSURANCE COMPANY, Appellant,

v.

## Jerry BILLINGS, Appellee.

### No. 1526.

Court of Appeals of Texas, Tyler.

Sept. 9, 1982.

Steven R. Guy, Elmer C. Beckworth, Jr., Norman, Spiers, Thrall, Angle & Rountree, Rusk, for appellant.

Larry R. Sinclair, Cox, Holcomb & Sinclair, Rusk, for appellee.

SUMMERS, Chief Justice.

This is an appeal from a judgment in favor of the insured under a group insurance policy providing benefits for loss of a foot by severance at or above the ankle.

The insured, appellee Jerry Billings (Billings) brought this suit against appellant Pilot Life Insurance Company (Pilot) to recover accidental dismemberment benefits for loss of his right foot under Pilot's group insurance policy with employees of the Kingsford Company (Kingsford) at its charcoal plant near Jacksonville, Texas. The case was tried to a jury which returned a verdict in favor of Billings. Based on the jury's answers the trial court rendered a judgment for Billings.

Pilot made a motion for instructed verdict and a motion for judgment notwithstanding the jury's verdict, each of which was overruled, and thereafter perfected this appeal.

We affirm.

Billings was employed by Kingsford at its charcoal plant on October 15, 1978. On that date, while engaged in his regular duties as a plant operator for Kingsford, he sustained an accidental injury to his right foot when his foot "slipped down into the mixer paddle blade." Billings alleges that this injury resulted in a severance of said foot at or above the ankle and was therefore a loss covered by the insurance policy herein. Amputation was necessary, and the severance was at the point depicted in Plaintiff's Exhibit No. 2 shown below.

The record reflects that Billings, as an employee of Kingsford, was on the date of injury covered by the group insurance policy issued by Pilot for accidental death and dismemberment benefits. The dismemberment benefits under said policy provided for the payment of the sum of $1,500.00 to any employee of Kingsford who sustained the loss of one member in an accident caused by external, violent and accidental means as evidenced by a visible wound or bruise on the exterior part of the body if such loss occurred within ninety days after the date of the accident. A later provision in the policy read: "Loss of a member means (a) loss of a foot by severance at or above the ankle, . . ." Billings was injured on October 15, 1978, and a portion of his foot was amputated, as shown above, within the period prescribed by the policy.

Pilot answered the suit with a general denial. It contends that Billings has failed to show that the amputation of a portion of his right foot constituted a severance at or above the ankle under the terms of the policy and that consequently it is not liable to Billings for any dismemberment benefits.

The parties entered into a written stipulation, which included the following:

(8) The sole issue which is determinative of Defendant's liability, if any, to Plaintiff under this suit is whether the above described amputation of the portion of Plaintiff's right foot constitutes a "severance at or above the ankle".

(9) If it is determined by this suit that Plaintiff did sustain the loss of a foot by severance at or above the ankle, Defendant shall be liable to Plaintiff for $1,500.00 as dismemberment benefits under the above described insurance policy.

Pilot has predicated its appeal upon six points of error. Pilot in point one asserts that the court erred in overruling its motion for instructed verdict, and in point three that the court erred in overruling its motion for judgment non obstante veredicto, each on the grounds of no evidence. Point two complains that there was no evidence to support the submission of Special Issue No. 1, and point four asserts there was insufficient evidence to support the jury's answer to that issue. In Special Issue No. 1, the jury found that Billings' right foot was lost by a severance at or above the ankle. Since points one through four are interrelated, they will be discussed and considered together.

In determining these points, we are mindful of the rule that in determining a "no evidence" point, which is a question of law, the appellate court will view the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences which are contrary to

the findings. *Butler v. Hanson,* 455 S.W.2d 942, 944 (Tex.1970); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.R. 361 (1960).

■ In determining an "insufficient evidence" point, which is a question of fact, we must consider and weigh all the evidence in the case to determine whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. If it is, then the finding should be set aside and a new trial ordered. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); Calvert, *supra.*

Billings testified that on October 15, 1978, he was involved in an accident at the charcoal plant which caused an injury to his right foot; and that this injury resulted in the amputation of the "foot or a portion of the foot." He identified and gave testimony for the admission of seven photographic exhibits (Plaintiff's Nos. 2 through 8) into evidence, each depicting his leg and portion of right foot remaining after the amputation. (Exhibit 2 was taken one week after the accident and the others about one month before trial). In response to an inquiry as to whether, in answer to interrogatories, he had stated a point at which the bone was severed, Billings replied, "Yes, at the ankle." In further answer to interrogatories, Billings described his surgery as "a traumatic amputation of the right foot at the level of the transmetatarsal area."

Dr. E.O. Bonsukan, a defendant's witness who performed surgery on Billings following the accident, testified:

That surgery was done because of a traumatic amputation of the foot which allegedly was done with a blade while he was working for the Charcoal Company. When he came to the emergency room that foot was really hanging by a piece of skin only. The rest of the bony structures are just gone. There was no way that the distal portion of the foot was salvageable because its blood supply and nerve supply were all disrupted. And so what I did on that day was to take him to the OR and the general anaesthesia and

with a tourniquet approximately here in the leg to control bleeding. Revised or completed the amputation of the distal end of the foot which is essentially a transmetatarsal amputation because I took out all the metatarsal bones, but technically it disjoined or disarticulated at the metatarsal joint. And smoothed out the edges of the bone, created a flap from the sole of the foot to cover that particular area to create your transmetatarsal stump.

Although Dr. Bonsukan testified that no part of the ankle was severed and that the ankle joint still functions, he stated in other testimony that when he spoke of the ankle he was referring to the "ankle joint." He further testified that from an anatomical standpoint the ankle (meaning the joint) involves the astragalus (one of the seven tarsal bones), the distalin, the tibia and the fibula. Under cross-examination, he admitted that from a functional standpoint the other six tarsal bones (cuboid, scaphoid, three cuneiforms and os calcis) would be the support area of the ankle area.

Our threshold consideration is the construction to be given the word "at" in the term "at or above the ankle," and what constitutes the ankle. In 3A C.J.S. 859, 860, we find the following definitions of ankle: (1) It is defined to mean the lower part of the leg; the slender part of the leg above the foot; the part of the leg near the ankle joint. (2) It is also defined to mean the joint; the joint connecting the foot with the leg; it is a ginglymus joint between the tibia and the fibula and the astragalus. (3) It is further defined as the tarsus, or that part of the foot between the metatarsus and the leg, consisting of seven short bones.

These definitions of the word "ankle" differ. Under the evidence in this case, the severance was at the transmetatarsal level—that is, at the junction of the tarsus and metatarsus bones. One of the definitions above defines the ankle as the tarsus, or that part of the foot between the metatarsus and the leg, consisting of seven short bones (astragalus, cuboid, scaphoid, three cuneiforms and os calcis). Under this defi-

nition the severance in the instant case would be at the ankle; the point of amputation or severance was at and adjacent to the cuboid and three cuneiform bones of the tarsus.

We find the word "at" is a preposition of extremely various use. Being less restricted as to relative positions, it may, in different constructions, assume their office, and so become equivalent, according to the context, to "about," "adjacent to," "close to," "in or near," "near," etc. It is a word of great relativity and elasticity of meaning and is somewhat indefinite, shaping itself easily into varying contexts and circumstances. It is not a word of precise and accurate meaning, or of clean clear-cut definition, and it has been said that the connection furnishes the best definition. 7 C.J.S. 192, 193.

In *Ramsay v. Maryland Am. General Ins. Co.* 533 S.W.2d 344, 349 (Tex.1976), our Supreme Court stated:

It is a settled rule that policies of insurance will be interpreted and construed liberally in favor of the insured and strictly against the insurer, and especially so when dealing with exceptions and words of limitation. *Providence Washington Ins. Co. v. Proffitt,* 150 Tex. 207, 239 S.W.2d 379 (1951). When the language of a policy is susceptible of more than one reasonable construction the courts will apply the construction which favors the insured and permits recovery. *Continental Cas. Co. v. Warren,* 152 Tex. 164, 254 S.W.2d 762 (1953); *Lloyd's Casualty Insurer v. McCrary,* 149 Tex. 172, 229 S.W.2d 605 (1950); *United Service Automobile Ass'n. v. Miles,* 139 Tex. 138, 161 S.W.2d 1048 (1942).

In the case of *Jones v. Continental Casualty Co.,* 189 Iowa 678, 179 N.W. 203 (1920), the Supreme Court of Iowa construed a policy provision which provided for indemnity for a "complete severance" of a foot "at or above" the ankle. The point of severance of plaintiff's ankle was only slightly above the point in the case at bar. The court in *Jones* held that an amputation of the foot in front of the ankle joint and heel,

between the cuneiform and scaphoid and through the cuboid bones, all being part of the tarsus, satisfied the policy provision requiring a severance at or above the ankle.

In so holding the court at pages 209–210 said:

The use of the words "at or above" indicates quite clearly that no definite or precise point of severance was fixed. It could be at or above.... We do not hesitate to say that since the bones severed and the point of severance was a part of the ankle, the severance was at the ankle... We reach the conclusion that under the evidence Plaintiff lost his foot, and the use of it, by severance at the ankle; at least it was a question for the jury. We hold that the words used as indicating the point of severance are, at the most, ambiguous; and that to carry out the purposes intended—that is, to pay indemnity for the loss of plaintiff's foot— it could be properly found that the severance was at the ankle. It follows that the court erred in directing a verdict for the defendant.

In viewing the evidence in its most favorable light, considering only the evidence and inferences which support the findings and rejecting the evidence and inferences to the contrary, we conclude that there is some evidence of probative force that Billings' right foot was lost by a severance at the ankle. Under the terms of the policy such severance must have been at or above the ankle. It is not necessary that the severance be above the ankle to authorize a recovery; a loss of the foot at the ankle is sufficient.

■ We have also reviewed all the evidence in the case and have concluded that the finding that Billing's right foot was lost by a severance at or above the ankle is not so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust. We believe that *Hardin v. Continental Casualty Co.,* 195 S.W. 653 (Tex.Civ.App.—Beaumont 1917, writ dism'd) and *Cone et al. v. Texas Employers' Ins. Ass'n.,* 251 S.W. 262 (Tex.Civ.App.— Beaumont 1923, no writ), both cited in ap-

pellant's brief, are clearly distinguishable from the instant case. In *Hardin,* the court upheld the trial court's finding of fact that the plaintiff's hand was not completely severed at the wrist within the meaning of the policy. In *Cone,* where the severance was six inches below the knee, the court upheld the trial court's finding of fact that plaintiff's leg had not been severed "at or above the knee." In the case at bar, the jury found a severance "at or above the ankle." We think the evidence supports this finding. Points one through four are overruled.

In its fifth point of error, Pilot complains of the statement made by Billings' counsel, during his closing argument, "that he did not understand why an insurance company had rather spend as they are trying to avoid paying the policy than to pay the policy." Pilot contends the statement was prejudicial, inflammatory and reasonably calculated to cause and probably did cause the rendition of an improper verdict.

In *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839 (Tex.1979), the court stated:

> In the case of improper jury argument, the complainant must prove a number of things. He has the burden to prove (1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. 3 McDonald, Texas Civil Practice § 13.-17.2 (1970). There are only rare instances of incurable harm from improper argument. The complainant has the further burden to prove (5) that the argument by its nature, degree and extent constituted reversibly harmful error. How long the argument continued, whether it was repeated or abandoned and whether there was cumulative error are proper inquiries. All of the evidence must be closely examined to determine (6) the argument's probable effect on a material finding. (7) Importantly, a reversal must come from an evaluation of the whole case, which begins with the voir dire and ends with the closing argument. The rec-

ord may show that the cause is weak, strong, or very close. From all of these factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence. *Aultman v. Dallas Ry. & Term. Co.,* 152 Tex. 509, 260 S.W.2d 596 (1953). Rules 434, 503, Tex.R.Civ.P.

An objection made by Pilot's counsel was sustained by the trial court. The ground of the objection was not stated, and there was no motion to instruct and no motion for mistrial. The statement was abandoned and not repeated by Billings' counsel.

█ It is our opinion that Pilot, by failing to state the ground of its objection and press for an instruction at the time of the argument, waived its complaint. *Standard Fire Ins. Co. v. Reese,* supra; *Maston v. Texas Employer's Ins. Ass'n,* 160 Tex. 439, 331 S.W.2d 907, 910 (1960); *Grandstaff v. Mercer,* 227 S.W.2d 372, 374 (Tex.Civ.App. —Fort Worth 1950, writ ref'd n.r.e.).

Furthermore, in looking at the whole record, we do not conclude that the argument was reasonably calculated to cause, and did cause the rendition of an improper verdict in the case. The probabilities are that the jury would have reached the same conclusion from the evidence without regard to the argument about which appellant now complains. Pilot's fifth point is overruled.

Pilot next complains, in its sixth point of error, that the trial court erred in refusing to include in its charge Pilot's requested explanatory instructions Nos. 1 and 2. Pilot contends that said instructions involved matters of a particular legal meaning and such refusal constituted an abuse of discretion.

Pilot's two requested instructions read as follows:

> No. 1. You are instructed that the term "loss by severance at or above the ankle" does not mean loss of use.

> No. 2. You are instructed that the term "loss by severance at or above the ankle" means actual removal of the foot.

Tex.R.Civ.P. 277 provides for the submitting of such explanatory instructions and

definitions as shall be proper to enable the jury to render a verdict.

The trial court submitted Special Issue No. 1 to secure an answer to the question stipulated by the parties as the sole issue determinative of Pilot's liability, that is, whether the amputation of the portion of Billings' right foot constituted a "severance at or above the ankle."

■ Pilot's requested instruction No. 1 was properly refused because the point of severance and not "loss of use" was the factual inquiry in Special Issue No. 1.

■ Pilot's requested instruction No. 2 purported to instruct the jury that "loss by severance at or above the ankle" meant actual removal of the foot. We believe the trial court properly refused this instruction. The evidence was undisputed that there was an actual removal of the severed portion of the foot. Instead of aiding the jury, this instruction would have been misleading to the jury in their consideration of the issue submitted. The court's action in refusing these instructions did not constitute an abuse of discretion. Pilot's sixth point is overruled.

The judgment of the trial court is affirmed.

RAMEY, J., not participating.