**MOTOR 9, INC., et al., Appellants,**

v.

**WORLD TIRE CORPORATION, Appellee.**

No. 07–81–0100–CV.

Court of Appeals of Texas, Amarillo.

March 31, 1983.

Rehearing Denied May 3, 1983.

---

LaFont, Tunnell, Formby, LaFont & Hamilton, Larry McEachern, Plainview, for appellants.

Cox & Hurt, Steve L. Hurt, Plainview, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

DODSON, Justice.

In this case, Motor 9, Inc., Craig B. Silverthorne, R.Q. Silverthorne and Clara Silverthorne are the appellants and World Tire Corporation is the appellee.* Motor 9 appeals from a judgment rendered by the trial court in favor of World Tire on an open account in the sum of $19,519.76, plus prejudgment interest in the sum of $7,241.20 and attorney's fees, as stated in the judgment. On appeal, Motor 9 brings ten points of error. Concluding that none of the points of error present cause for disturbing the judgment, we affirm.

World Tire is a manufacturer of tires and Motor 9 is a retailer of tires, oil additives and chemicals. In early 1975, World Tire began selling tires to Motor 9 on an open account. On 25 May 1978, World Tire ceased selling tires to Motor 9. At that time Motor 9's account with World Tire was past due in the amount of $19,519.76. In May 1978, World Tire brought this action to recover the unpaid balance on the account plus a one percent (1%) per month interest or service charge beginning with the 25 October 1976 statement and attorney's fees. In its action, World Tire asserted that the twelve percent (12%) per annum charge was permissible under the provisions of article 1302–2.09, Miscellaneous Corporation Laws Act (Vernon 1980). Motor 9 brought a cross action for usury under article 5069–1.-06, Tex.Rev.Civ.Stat.Ann. (Vernon 1971), seeking to recover twice the amount of the service charge, a forfeiture of the unpaid balance on the account and attorney's fees.

The action was tried with a jury. In response to special issues, the jury found that Motor 9 agreed to and stipulated for the interest or service charge of one percent (1%) per month on all past due accounts as charged by World Tire. The jury also found the amounts of attorney's fees which are stated in the judgment. Based on the jury's verdict, the trial court rendered judgment in favor of World Tire in the sum of $19,519.76, plus prejudgment interest on the account in the sum of $7,241.20, plus attorney's fees, as stated therein.

Appealing from the judgment, Motor 9 brings ten points of error. By its second point of error, Motor 9 maintains that the evidence is legally and factually insufficient to establish an agreement or stipulation by it for the interest or service charge assessed on the past due balance of the account.

In determining Motor 9's legal insufficiency challenge (*i.e.* "no evidence" challenge), we consider only the evidence and inferences tending to support the jury's findings and we disregard any contrary evidence and inferences. *Butler v. Hanson,* 455 S.W.2d 942, 944 (Tex.1970); *Pilot Life Ins. Co. v. Billings,* 641 S.W.2d 644, 646–47 (Tex.App.—Tyler 1982, no writ). Furthermore, in deciding its factual insufficiency challenge, we must consider and weigh all the evidence to ascertain whether the challenged jury finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Hernandez v. Southern Pacific Transp. Co.,* 641 S.W.2d 947, 950 (Tex.Civ. App.—Corpus Christi 1982, no writ).

---

* In this opinion all of the appellants are referred to as Motor 9 and the appellee as World Tire.

The evidence shows that the invoices sent by World Tire to Motor 9 with each purchase of tires made no mention of any service charge on past due accounts. However, on the 25th of each month (beginning with 25 April 1975), World Tire sent Motor 9 a monthly statement containing various information concerning the open account. Each of these monthly statements contained the following provision: "SERVICE CHARGE OF 1% ON ALL PAST DUE ACCOUNTS." This provision was clearly set out in a conspicuous black box at the lower portion of the statement. While all of the statements from 25 April 1975 until sales were discontinued in 1978 contained the service charge provision, no charge was actually imposed until 25 October 1976. On the 25 October 1976 statement, and those subsequent statements containing a service charge, the letters "SVCHG" were conspicuously printed in the column where an invoice number would ordinarily appear. The corresponding charge appeared in the "CHARGES" column. These statements were sent until 25 May 1978 when World Tire ceased to sell to Motor 9.

■ Motor 9 received a statement each month containing the service charge provision both before and after any such charge was actually imposed. Each statement imposing a service charge clearly contained the letters "SVCHG" to indicate a service charge where invoice numbers were usually placed. Motor 9 continued to order and receive goods from World Tire for several months after the first service charge was imposed on 25 October 1976. Mrs. Miller, treasurer for World Tire, testified that she had had several conversations with Wallace Cannon, Motor 9's manager, about payment terms, in which she informed him that "if the money isn't in we are going to have to put the one percent service charge on the past due monies." Cannon responded, "fine" according to Mrs. Miller. At trial, Cannon denied ever agreeing to the service charge but admitted he was aware of the service charge provision on the bottom of each monthly statement. Cannon also admitted paying the service charge while manager of Motor 9, and paying the month-ly bills on time in order to avoid imposition of the service charge.

The record reveals that payments on the balance of the open account were made by checks signed either by Craig Silverthorne, as president, or Wallace Cannon, in his capacity as manager of Motor 9. These checks were written over a period of time extending from 28 April 1975 until November of 1977, several months after the first service charges were imposed. Further, Mrs. Miller testified as to several orders placed by Motor 9 on and subsequent to 25 March 1977, approximately five months after the first service charge was assessed. Cannon admitted that he found no errors in the statements sent by World Tire and Motor 9 never challenged any statement and never objected to the service charge.

Applying the appropriate legal standards stated above, we conclude that the evidence is legally and factually sufficient to support the jury's challenged finding that Motor 9 agreed to the interest or service charge. Motor 9's second point of error is overruled.

■ By its sixth point of error, Motor 9 claims the trial court erred by overruling its "First Amended Motion for Summary Judgment" because there was "no genuine issue that appellants did not agree to the imposition of the higher rate of interest permitted by article 1302–2.09, Miscellaneous Corporation Laws Act, V.A.T.S." When, as in this instance, there has been a conventional trial on the merits, the interlocutory order overruling a motion for summary judgment is not reviewable. *Ackermann v. Vordenbaum,* 403 S.W.2d 362, 365 (Tex.1966); and *Texas City Hotel Corp. v. Wilkenfeld,* 410 S.W.2d 860, 861 (Tex.Civ.App.—Waco 1966, no writ). *See also Garcia v. City of Lubbock,* 634 S.W.2d 776, 780 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.). Motor 9's sixth point of error is overruled.

By points of error one, three, four and five, Motor 9 challenges the court's definitions (*i.e.* explanatory instructions) given in the charge to the jury. On four separate pages in the charge immediately preceding the first special issue, the court abstractly instructed the jury as follows:

"Agreement" means the bargain of the parties in fact as found in their language or by implication by other circumstances including course of dealing or usage of trade or course of performance.

A "course of dealing" is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

A contract for sale of goods may be made in any manner sufficient to show agreement including conduct by both parties which recognizes the existence of such a contract.

As to additional terms in acceptance and confirmation you are instructed:

(a) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(b) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(1) the offer expressly limits acceptance to the terms of the offer;

(2) they materially alter it; or

(3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(c) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any provisions as charged to you herein.

Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.

In the first point of error, Motor 9 maintains that "[t]he trial court erred in instructing the jury as to definitions taken from the Texas Business and Commerce Code because such definitions apply only to the construction of contracts for the sale of goods and not as to the existence vel non of usury under article 1302–2.09, Miscellaneous Corporation Laws Act, V.A.T.S." By the third point of error, Motor 9 claims that "[t]he trial court erred in instructing the jury that Motor 9, Inc. could agree to the imposition of a service charge of one per cent (1%) on all past due charges by implication or other circumstances including course of dealing or usage of trade or course of performance." In the fourth point of error, Motor 9 contends that "the trial court erred in instructing the jury that Motor 9, Inc. could agree to the imposition of a one per cent (1%) service charge on all past due charges based upon the conduct of both parties which recognizes the existence of a contract." By the fifth point of error, Motor 9 further asserts that "[t]he trial court erred in instructing the jury that Motor 9, Inc. could agree to the imposition of a service charge of one per cent (1%) on all past due charges by acquiescing in without objection to a course of performance."

In its objection to the charge in the trial, Motor 9 stated:

4.

*Defendants object to the instructions as a whole given by the court for the reason that the Jury Question No. 1 to which the instructions apply are from the Business and Commerce Code in Texas.*

In this regard Defendants would point out to the Court that the Question No. 1 is taken from the miscellaneous corporation statutes of Texas, specifically being Article 1302–2.09, and that these instructions taken from the Uniform Commer-

cial Code are definitions to be applied in the construction of sales contracts and are not set out in order to make a determination of usury. The instructions taken from the Uniform Commercial Code are to be used by the Court as aids in construction of ambiguous contracts, or as an aid in determining the intent of the parties, if the contract is not definite. *These instructions, therefore, are not relevant to any jury issue being submitted to the jury, and, as such, may lead the jury to give undue weight or emphasis to these instructions in answering Jury Question No. 1.*

*Defendants further object to the instructions taken from the Uniform Commercial Code or the Business and Commerce Code in Texas for the reason that specific definitions have been taken from the Business and Commerce Code, but other definitions have been left out, giving undue weight and emphasis to the Plaintiff's position in this case.*

In this regard the Defendants would point out specifically to the Court that Section 1.205, (Subsection D) is excluded from the Court's charge, and said section explains that the express terms of an agreement will control over the course of of [*sic*] dealing and use of trade, and that the course of dealing controls the usage of trade.

In this regard the defendants would point out to the Court that there is an express written agreement in this case, constituting one or more of the following: a packing slip or a billing slip. Number 2, an invoice. And, Number 3, Defendant's Exhibit No. 1 or the Carnegie Sales Program, each of which set out the terms of payment.

*In this regard Defendant is specifically objecting to the definition of "course of dealing", as well as to the other definitions and instructions set forth in the Court's charge.* (emphasis added).

Rule 274, Tex.R.Civ.P. provides, in part, that:

A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. Any complaint as to an instruction, issue, definition or explanatory instruction, on account of any defect, omission, or fault in pleading, shall be deemed waived unless specifically included in the objections.

In general, the purpose of objections is to aid the court in preparing a correct charge and such objections must point out distinctly the matter to which the party objects and the grounds of his objection. *Id.* An objection which fails specifically to designate the error and the grounds of complaint is properly overruled. *See, e.g. Davis v. Campbell,* 572 S.W.2d 660, 663 (Tex.1978). Furthermore, a party is confined to the grounds of objection stated in the trial court and, on appeal, he will not be allowed to enlarge his complaint to embrace additional grounds. *Bohanan v. Hans,* 26 Tex. 445, 452 (1863); *Loper v. Andrews,* 395 S.W.2d 873, 875 (Tex.Civ.App.—Waco), *aff'd on other grounds,* 404 S.W.2d 300 (Tex.1966); and *Pullen v. Russ,* 226 S.W.2d 876, 881 (Tex.Civ.App.—Fort Worth 1950, writ ref'd n.r.e.). Moreover, the trial court can correctly refuse to consider objections which, without detailing their bases, state merely that a definition is not a correct legal definition, place undue burden on the objecting party, or are too broad and will mislead the jury and prejudice the objecting parties' position. *See* 3 R. McDonald, Texas Civil Practice § 12.29.4 (rev. 1970).

In the present case, Motor 9's objections in the trial court are too general and fail to point out a specific complaint to a particular definition. From Motor 9's objections, the court was unable to discern a specific complaint and correct any alleged error therein. Furthermore, Motor 9's points of error attempt to enlarge on its trial court complaints. Consequentially, we overrule Motor 9's first, third, fourth and fifth points of error.

By its seventh point of error, Motor 9 asserts that "[t]he trial court erred in rendering judgment for [World Tire] because the original principal balance of the account did not equal or exceed $5,000.00 as re-

quired by article 1302–2.09, Miscellaneous Corporation Laws Act, V.A.T.S., for the imposition of the higher rate of interest." Relying on *Dean Vivian Homes v. Sebera's Plumbing & Appl.,* 615 S.W.2d 921, 925 (Tex.Civ.App.—Waco 1981, no writ), Motor 9 argues that article 1302–2.09 does not apply to a debt on an open account unless the original principal balance is $5,000 or more. We disagree.

Article 1302–2.09 of the Miscellaneous Corporation Laws Act (Vernon 1980), provides, in pertinent part, that corporations may

agree to and stipulate for any rate of interest as such corporation may determine, not to exceed one and one-half percent (1½%) per month, on any bond, note, debt, contract or other obligation of such corporation under which the original principal amount is Five Thousand Dollars ($5,000) or more, *or on any series of advances of money pursuant thereto if the aggregate of sums advanced or originally proposed to be advanced shall exceed Five Thousand Dollars ($5,000)* . . . . (emphasis added).

▮ The application of article 1302–2.09 is not limited to corporate bonds, notes, debts, contracts or other obligations in which the original principal amount is $5,000 or more. That statute further provides that corporations may agree to an interest rate not to exceed one and one half percent (1½%) per month on any bond, note, *debt,* contract or *other obligations* on any series of advances of money pursuant thereto (*i.e.* the debt or obligation in this instance) *if the aggregate of sums advanced or originally proposed to be advanced shall exceed* $5,000. Consequentially, we are persuaded that the "series of advances" provision applies to all credit arrangements enumerated in the statute (*i.e.* bonds, notes, debts, contracts or other obligations). Certainly, an open account is a "debt" or "other obligation."

▮ In the present case, the undisputed evidence shows that the first monthly statement from World Tire to Motor 9 was on 25 April 1975. That statement was for the sum of $828.16. However, the record further shows that World Tire did not charge the one percent (1%) per month service charge until 25 October 1976. At that time the aggregate amount of the unpaid balance on the account (*i.e.* debt) was in excess of $5,000 (*i.e.* approximately $17,612.86), and continued to remain in excess of $5,000. The jury found that Motor 9 agreed to the one percent (1%) monthly interest charges (*i.e.* which were made on and after 25 October 1976). In our disposition of Motor 9's second point of error, we concluded that the evidence is legally and factually sufficient to support that jury's finding. Consequently, we overrule Motor 9's seventh point of error.

▮ In its eighth point of error, Motor 9 maintains that the trial court erred by rendering judgment for World Tire because the jury did not find the amount of damages sustained by World Tire. By the ninth point of error, Motor 9 claims the trial court erred in rendering judgment for World Tire because there was no finding by the jury that the charges made by World Tire were usual, customary or reasonable. At the trial, the matters complained of by these points of error were undisputed. It is well settled that the trial court is not required to submit issues on undisputed matters. *See Sullivan v. Barnett,* 471 S.W.2d 39, 44 (Tex. 1971); *Wright v. Vernon Compress Co.,* 156 Tex. 474, 296 S.W.2d 517, 522–23 (1956). Motor 9's eighth and ninth points of error are overruled.

By its tenth point of error, Motor 9 claims "the trial court erred in failing to render judgment for appellants in accordance with the provisions of article 5069–1.06, V.A.T. S." Our disposition of points of error one through nine is dispositive of this point of error.

In conclusion, we overrule Motor 9's ten points of error. The judgment is affirmed.