NO. 07-03-0036-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 8, 2004
_____

COMMUNITY IMPROVEMENT ASSOCIATION OF LAKE
CONROE HILLS, INC.,

               Appellant

v.

DON A. BECKHAM and HEIDI L. BECKHAM,

               Appellees
_____

FROM THE 410TH DISTRICT COURT OF MONTGOMERY COUNTY;

NO. 01-11-07177-CV; HON. K. MICHAEL MAYES, PRESIDING
_____

***Memorandum Opinion***
_____

Before QUINN, REAVIS, and CAMPBELL, JJ.

The Community Improvement Association of Lake Conroe Hills, Inc. (the Association) complains in 13 issues of a take-nothing judgment entered in favor of appellees Don A. Beckham and Heidi L. Beckham (the Beckhams). The Association had sued the Beckhams to enforce deed restrictions, declare their construction endeavors a nuisance, and recover civil damages and attorney's fees. We reverse and render in part, reverse and remand in part for further proceedings and affirm in part.

## *Background*

The Beckhams own a home in the Lake Conroe Hills subdivision, which subdivision is subject to restrictive covenants. They began renovating the home in May 2000. The renovations continued into the year 2002 and were not completed by the time of trial. Furthermore, much of the work was done by Don Beckham himself, and during their construction, the Beckhams left materials, supplies, equipment, and trash on the property. Various other residents of the subdivision complained about this to the Association. The latter, in response, requested the Beckhams to clean their property. They did not but rather continued with their construction.

The renovations included excavation of the land at the rear of the house and the erection of a patio. Apparently, the floor of the patio served as the ceiling of a 1000 square foot space that the Beckhams were finishing to resemble the first floor of a three story home. Also erected below the patio but next to this 1000 square foot area was a small brick and windowed edifice. Other items were also built on the property. They included a retaining wall that eventually had to be replaced and a metal tower standing higher than the roof of the home. The tower was to be used to receive high definition television signals from Houston, Texas.

The Association eventually sued the Beckhams for nuisance and to enforce various of the restrictive covenants. Initially, the Beckhams chose to represent themselves and answered the petition with a general denial. Later, requests for admissions were served upon them, which requests they failed to answer in a timely manner. And, though they attempted to relieve themselves of the effect of their omission, the trial court struck only three of the deemed admissions.

2

Eventually, the Beckhams retained counsel when they were served with a motion for summary judgment filed by the Association. They also later sought an extension of time to respond to the motion. The extension was granted, and the summary judgment was subsequently denied. The case was then tried to a jury. The latter held for the Beckhams, and judgment was eventually entered reflecting that verdict.

### Issue 1 - Late Response to Motion for Summary Judgment

In its first issue, the Association complains of the trial court's decision to extend the time in which the Beckhams had to respond to its motion for summary judgment. We overrule the point.

An appellate court cannot review an order overruling a motion for summary judgment via appeal after a conventional trial on the merits. *Motor 9, Inc. v. World Tire Corp.*, 651 S.W.2d 296, 299 (Tex. App.–Amarillo 1983, writ ref'd n.r.e.). Given this, the fact that the trial court at bar overruled the motion for summary judgment, and the fact that a conventional trial on the merits has been held, any question about the validity of the trial court's decision to extend the deadline at issue is effectively moot or irrelevant. This is so because to afford the first issue any meaning or effect would require us to also decide whether the extension affected the trial court's decision to deny the summary judgment motion. Yet, because we cannot review the decision to deny the motion, it does not matter if the trial court legitimately afforded the Beckhams more time to respond to the motion. So, we overrule the first issue.

### Issue 2 - Striking of Deemed Admissions

In its second issue, the Association argues that the trial court erred in striking three of the 38 deemed admissions made by the Beckhams. We overrule the issue.

3

The Beckhams failed to respond to admissions served on them. Consequently, they were deemed admitted against them. However, upon their motion, the trial court struck three of the admissions. The three involved were:

35. You knowingly violated the Deed Restrictions.

36. You willfully violated the Deed Restrictions.

37. All of the facts contained in *Plaintiff's First Amended Original Petition* are true and correct.

According to the Association, the trial court erred in permitting their amendment or withdrawal because the Beckhams failed to show good cause to justify the action. Yet, other than simply mentioning Texas Rule of Appellate Procedure 198.3 in general, the Association provided us with no legal authority discussing the concept of good cause or illustrating why the reasons proffered by the Beckhams to justify their omission failed to satisfy the applicable standard. This falls short of complying with the requirements of Rule 38.1(h) of the Texas Rules of Appellate Procedure. The latter obligates an appellant to include within its argument "appropriate citations to authorities . . . ." Since the Association did not do so, it waived its complaint. *See State Farm Lloyds, Inc. v. Williams*, 960 S.W.2d 781, 789 (Tex. App.–Dallas 1997, pet. dism'd by agr.) (holding that the failure to cite to supporting authority waives the issue).

### Issues 3, 4, 5 and 12 - Nuisance

Issues three, four, five, and twelve involve the question of nuisance. Through them, the Association attacks the trial court's 1) refusal to grant it a directed verdict and judgment notwithstanding the verdict on the issue and 2) refusal to exclude pictures depicting the condition of other parcels of property in the subdivision. We sustain the issues.

4

The deed restrictions at issue provided:

No noxious or offensive trade or activity shall be carried on or maintained on any lot in said subdivision, nor shall anything be done thereon which may be or become a nuisance in the neighborhood. A nuisance shall include but not be limited to: a truck larger than three-quarter ton parked on lots or roads or permanently kept on property; any motor vehicle not properly licensed by the State of Texas; junk or wrecking yards; automobiles, trucks or other vehicles used for parts.

Moreover, the Beckhams admitted that the construction material, supplies, equipment, trash and debris "located on [their] property for more than 6 months . . . created a nuisance," "a dangerous condition," "a threat to the health and safety of [their] neighbors," "a threat to the health and safety of [their] neighbors' children," and "a threat to the health and safety of the community of Lake Conroe Hills subdivision as a whole."[1] These admissions wrought a two-fold effect. First, being classified as judicial in nature, the admissions prevented the Beckhams from offering any evidence at trial that contradicted them. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 905 (Tex. 2000); *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989). Second, they also relieved the trial court from the obligation of submitting an issue to the jury on the topic. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d at 905.

Thus, to the extent that the trial court admitted the pictures alluded to above "for the purposes of . . . the question of nuisance," it erred. Simply put, the Beckhams were prohibited from tendering evidence that contradicted their admission that they created a

---

[1]Their admissions arose due to the Beckhams' failure to timely respond to the Association's requests for admissions. TEX. R. CIV. P. 198.2(c) (stating that if a response is not timely filed, the request is considered admitted without the necessity of a court order). Moreover, the trial court refused to allow them to withdraw or amend the admissions, which decision the Beckhams did not appeal.

nuisance. *Horizon/CMS Healthcare Corp. v. Auld*, *supra*; *Marshall v. Vise*, *supra*. And, since they were barred from tendering it, the trial court could not admit it.

Moreover, having admitted the existence of a nuisance, the Beckhams were not entitled to the submission of, nor was the Association obligated to request, a jury issue on the matter. *Horizon/CMS Healthcare Corp. v. Auld*, *supra*. Rather, the circumstance afforded the trial court no avenue other than to direct a verdict finding that a nuisance existed. Simply put, the admissions resolved any factual dispute regarding, and established the Association's right to, judgment as a matter of law on the claim. *See Rudolph v. ABC Pest Control, Inc,.* 763 S.W.2d 930, 932 (Tex. App.–San Antonio 1989, writ denied) (stating that a directed verdict is proper if the evidence conclusively proves facts that establish a party's right to judgment as a matter of law).

Finally, we conclude that the errors were harmful. This is so because the jury determined that no nuisance arose, and judgment was entered on that verdict. Had it not been for the errors, the jury could not have had the opportunity to so rule.

### *Issues 6, 7, 8, and 11 - Erection of Tower*

The next issues which we address, namely six, seven, eight, and eleven, involve the erection of the metal tower. Through them, the Association argues that the trial court erred when it refused to 1) direct a verdict or grant a judgment notwithstanding the verdict finding that the construction of the tower without advance approval from the Association violated the deed restrictions and 2) submit a jury instruction informing the jurors that the words "building" and "structure" were synonymous. It is also contended that the jury's verdict that said construction did not violate the restrictions lacks evidentiary support. We overrule each point.

6

The particular restriction in dispute is found in paragraph "1" of the document and provides that:

> No *building* shall be erected, placed or altered on any lot, property or area in this subdivision until the building plans, specifications and plot plans showing the location of such *building* have been approved in writing by LAKE CONROE HILLS LIMITED, or its designated representative, or such architectural control committee as may be established, as to conformity and harmony of external and structural design and quality with existing structures in the subdivision and as to the location of the *building* and in conformity with the declarations, reservations, protective covenants, limitations, conditions and restrictions, as hereinafter set out.

(Emphasis added). Given the wording utilized in paragraph 1, we must first conclude that the tower constituted a building before we can sustain the Association's issues. This we cannot do.

Deed restrictions are subject to the same rules of interpretation applicable to contracts. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). So, when construing them, we strive to give effect to the parties' intent as garnered from the document as a whole and the words used in it. *Cross Timbers Oil Co. v. Exxon Corp*, 22 S.W.3d 24, 26 (Tex. App.–Amarillo 2000, no pet.). We must also afford those words their plain, ordinary, and generally accepted meaning, unless the document requires otherwise. *Id.*; *see Air Park - Dallas Zoning Committee v. Crow Billingsley Airpark, Ltd.,* 109 S.W.3d 900, 909 (Tex. App.–Dallas 2003, no pet.) (stating that words in a restrictive covenant will be given their commonly accepted meaning). With this said, we turn to the words before us.

The term "building" commonly denotes "a structure" having "a roof and walls." *Webster's Revised Unabridged Dictionary* (1998). On the other hand, the word "structure" usually denotes "something . . . that is constructed" or "arranged in a definite pattern." *Id.* Given this, one can readily see that though the two words may be related, they are not the

7

same. While a building can be considered a structure for it is "something that is constructed" and "arranged in a definite pattern," not everything that can be built in a definite pattern is a building. For instance, the water fountain appearing at the entrance of Texas Tech University is unquestionably constructed and most definitely arranged in a certain pattern but it has no walls or roof. So, while one could reasonably consider it a structure, it could hardly be deemed a building. And, this leads us to hold that the words "structure" and "building" are not *per se* synonymous.

Furthermore, our holding is further supported by the deed restrictions themselves. In paragraph 3(G) of same there appears the following:

> Except for townhouses and multi-family dwellings . . . no *building or structure* shall be erected on any lot nearer than four . . . feet including roof overhang from an interior lot line . . . .

(Emphasis added). As can be seen, both the words "building" and "structure" are used. What makes this significant is the rule requiring us to give meaning to every word contained in the document. *Cherokee Water Co. v. Freeman*, 33 S.W.3d 349, 354 (Tex. App.–Texarkana 2000, no pet.) (stating that the court is required to give effect to all words used and is not permitted to assume that the drafter intended some words to have no effect). Yet, if we were to adopt the Association's argument that the two words mean the same thing, we would effectively be rendering one or the other redundant, that is, we would be violating the rule expressed in *Freeman*. So, due to the fact that the individual who drafted the restrictions included both words in the paragraph, authority compels us to presume that the drafter intended the words have different meanings.

8

In view of our foregoing observations, we cannot but find that the trial court acted properly in refusing to instruct the jury that "building" and "structure" meant the same thing.[2] Nor can one who sees the pictures of the metal tower contained in the record deny that the item lacked both walls and a roof. And, because it lacked such characteristics, it was within the province of the jury to conclude that the tower was not a "building" as that term is commonly understood. Consequently, the trial court had basis upon which to refuse to submit the instruction sought by the Association, and some evidence existed to support the jury's finding that the Beckhams did not violate paragraph 1 by failing to obtain approval as a condition precedent to erecting the tower.

### *Issues 9 and 10 - Construction Period*

In their ninth and tenth issues, the Association complains of a partial directed verdict granted in favor of the Beckhams. Through it, the trial court found that the six-month construction period mentioned in paragraph 3(J) of the deed restrictions only applied to new construction, as opposed to alterations or additions to an existing residence. And, since the Beckhams were simply modifying an existing home, the trial court refused to ask the jury if the Beckhams violated 3(J) and instead directed a verdict on the matter. We sustain the Association's ninth issue and overrule the tenth.

Paragraph 3(J) provides:

CONSTRUCTION. All materials used in the exterior construction of any residence or other structure must be approved by Lake Conroe Hills Limited or its assigns or nominees before any structure may be erected and only new

---

[2]In arriving at our holding we distinguish *Mitchell v. Gaulding,* 483 S.W.2d 41 (Tex. Civ. App.—Waco 1972, writ ref'd n.r.e.), a case upon which the Association relies. There, the restrictions contained the word "structure," and the court held that a radio tower was a "structure." *Id.* at 43. Yet, the operative word appearing in the restriction at bar is "building," not "structure." So *Mitchell v. Gaulding* is quite inapposite.

> construction materials may be used except for used brick. No concrete blocks shall be used in said construction and all buildings shall be built on a slab or solid concrete beam foundation or standing on concrete blocks. In no event shall any old house or building be moved on any lot or lots in said subdivision. *The exterior construction of any kind and character, be it the primary residence, garage, porches, or appendages thereto, shall be completed within six (6) months after the start of foundation.*

(Emphasis added). As can be seen, nothing in the provision expressly limits the application of the italicized sentence to new construction. Moreover, the plain wording of that sentence belies any notion that the restriction merely encompasses only the construction of new houses. Indeed, we cannot ignore the fact that the person who drafted the restrictions used the phrase "of any kind and character" to describe the type of exterior construction subject to the six-month period. Simply put, exterior construction "of any kind and character" is all encompassing. And, that the person who drafted the deed restrictions may have referred to the alteration of existing structures elsewhere in the document but omitted the term in the italicized sentence does not convince us otherwise. This is due to the inherent breadth of the word "any." "Any" means, in the context before us, "all." So, when exterior construction "of any kind and character" must be completed within six months, the passage cannot reasonably be read as meaning only "some" types of construction.

Moreover, to adopt the Beckhams' interpretation of the phrase would lead to an absurd result. For instance, those building a new home would have to complete the exterior within six months. Yet, if one sought to make extensive additions or alterations to the exterior of an existing house (*e.g.* additions increasing the size of the house two-fold) he could take as many years as he chose to finish the job and, consequently, keep the external appearance of his property in unsightly disarray as long as he chose. That makes

10

no sense, and we cannot accord an absurd meaning to the words of a document. *Criswell v. European Crossroads Shopping Center, Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990).

In sum, we find that the six-month restriction was not intended to apply and cannot reasonably be read as applying only to the construction of a new house. Instead, it encompassed additions and alterations to the exterior of an existing house. And, since the record indisputably revealed that the Beckhams failed to complete the exterior portion of the alterations to their home within six months of their initiation, the trial court erred in directing a verdict in favor of the Beckhams on the matter. This very same indisputable evidence also leads us to conclude that there was no need to ask the jury if the deed restriction had been violated. Again, a jury need not be asked about issues which involve no factual dispute. *Horizon/CMS Healthcare Corp. v. Auld, supra.* Thus, we reject the Association's contention that such an issue had to be submitted to the jury. Finally, we hold that the error committed *viz* the partial directed verdict was harmful since it deprived the Association of opportunity to recover upon one of its claims.

### *Issue 13 - Civil Damages and Attorney's Fees*

In its final issue, the Association asserts that the trial court erred in failing to award it civil damages and attorney's fees. We sustain the issue.

A court may assess civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation. TEX. PROP. CODE ANN. §202.004(c) (Vernon 1995). However, since the language of the statute is permissive in nature, the award of such damages is left to the trial court's discretion. *Air Park - Dallas Zoning Committee v. Crow-Billingsley Air Park, Ltd.,* 109 S.W.3d at 912. At bar, the trial court did not consider the assessment of civil damages because the jury found there was

11

no violation of the deed restrictions.  Since we have determined that the six-month time period in paragraph 3(J) of the restrictions was violated, the case should be remanded for a determination of the civil damages to be awarded, if any.

Next, the award of attorney's fees is not discretionary.  Instead, the legislature stated that the trial court "shall allow [attorney's fees] to a prevailing party who asserted" an action for breach of a restrictive covenant pertaining to realty.  TEX. PROP. CODE ANN. §5.006(a) (Vernon 2004).  Nevertheless, it lies within the trial court's bailiwick to determine the reasonableness of the fees for we cannot find facts.  *Briargrove Park Property Owners, Inc. v. Riner,* 867 S.W.2d 58, 62 (Tex. App.–Texarkana 1993, writ denied).  Therefore, we must remand the issue of attorney's fees to the trial court as well.

In summary, we reverse the judgment to the extent it denies the Association recovery upon its claim of nuisance and the claim involving the violation of paragraph 3(J) of the deed restrictions and render judgment in favor of the Association upon those two claims.  We next reverse and remand that portion of the judgment denying the Association damages and attorney's fees and awarding the Beckhams their costs of court.  In all other things, the judgment is affirmed.


Brian Quinn
Justice